BRAY–ROBINSON–CURRY WOOLEN MILLS v. W. F. WALKER & SON et al.

(Court of Civil Appeals of Texas. Texarkana. March 12, 1914.)

1. PRINCIPAL AND AGENT (§ 19*)—ACTIONS—BURDEN OF PROOF.

In an action for a debt which defendants claimed they had paid to plaintiff's agent, defendants have the burden of proving the agency of the one to whom they paid the debt.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 36; Dec. Dig. § 19.*]

2. PRINCIPAL AND AGENT (§ 22*)—EVIDENCE TO ESTABLISH.

Declarations of an agent as to his authority are incompetent to prove agency.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 40; Dec. Dig. § 22.*]

3. JUSTICES OF THE PEACE (§ 29*)—LIABILITY—JUSTICE'S SURETY.

Where defendants paid their account to a justice of the peace, to whom it was sent for suit, defendants cannot recover from the sureties on the official bond of the justice, for, if the payment was to the justice in his official capacity, defendants are discharged, and, if not, the sureties cannot be liable; the bond not ex-

tending to the acts of the justice in his unofficial capacity.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 56–65; Dec. Dig. § 29.*]

4. PAYMENT (§ 5*)—AUTHORITY TO COLLECT—JUSTICE OF THE PEACE.

Rev. St. 1911, art. 2322, provides that, when a claim is lodged with a justice of the peace for suit, it shall be his duty to issue forthwith a writ or citation for the defendant or defendants, while article 2283 requires the justice to give a bond for the faithful performance of all the duties required by law. A justice to whom a claim had been transferred for suit collected it without suit, by representing that he was so authorized. Held, that the payment to the justice, who was not authorized to make the collection, did not discharge the debtor, for it was not an official act; the requirement that a justice give a bond being no more than the statutory requirement that the county judge give a bond, and the justice not being authorized to bind the sureties on his bond by receipt for the collection of a claim transferred to him for suit, as is the case of a constable with respect to a claim transferred to him for collection.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 7, 8; Dec. Dig. § 5.*]

Appeal from Shelby County Court; J. M. Sanders, Special Judge.

Action by the Bray-Robinson-Curry Woolen Mills against W. F. Walker & Son, who impleaded others. From a judgment for defendants, plaintiff appeals. Reversed and rendered.

Davis, Davis, & Davis, of Center, for appellant. S. H. Sanders, A. L. Kirkpatrick, and Carter & Walker, all of Center, for appellees.

HODGES, J. In November, 1912, the appellees were indebted to the appellant in the sum of $131 on account for merchandise purchased. Some time during that month the account was placed in the hands of Davis, Davis & Davis, attorneys at law, for collection, with instructions to file suit if it was not paid. On the 26th day of that month Davis, Davis & Davis mailed a verified statement of the account to P. H. Davis, a justice of the peace, at Teneha, in Shelby county, with directions to file the same for suit, and to issue citations immediately. They also inclosed with the account three typewritten copies of the citations, to be signed by the justice. The account was received by P. H. Davis, the justice of the peace, in the due course of mail; but, instead of issuing the citations as directed, he called upon Walker & Son and presented the account for payment, telling them that it had been placed in his hands for collection. Walker & Son gave P. H. Davis a check for the amount of the account, taking his receipt for the same. The check by which the payment was made was, at the request of P. H. Davis, made payable to him personally. This form was suggested by Davis in order that he might get a commission for making the collection. The at-

torneys representing the appellant knew nothing of this transaction till some time thereafter, but thought their directions for filing suit had been obeyed by the justice of the peace. It seems that before the time for the trial arrived T. O. Davis, of the firm of Davis, Davis & Davis, called upon Walker & Son and mentioned the fact that they had been sued upon this claim, and was then informed for the first time that the amount had been paid to P. H. Davis, and that no suit had actually been filed. Walker was then informed that P. H. Davis had no authority to collect the claim; that it had been sent to him for suit, and not for collection in that way. The attorneys for appellant, however, made demand upon P. H. Davis for the money, but were unable to collect it. Shortly afterwards P. H. Davis died. This suit was filed by the appellant against Walker & Son upon the same claim, in the court presided over by the successor to P. H. Davis. Practically the only defense presented by Walker & Son was the payment theretofore made to P. H. Davis. They also impleaded the bondsmen of the deceased justice of the peace, and asked for judgment over against them in case the plaintiff should recover in the suit. Judgments were rendered against the appellant in both the justice and county courts. It appears that in the county court the sureties of P. H. Davis were dismissed from the case on their demurrer.

There are several assignments of error, but only that which challenges the sufficiency of the evidence to support the verdict will be considered.

The court gave no general charge, but submitted only the following special issue: "Did Bray-Robinson-Curry Woolen Mills, the plaintiff, authorize P. H. Davis to collect from W. F. Walker & Son, the defendants, the sum of money owing by the defendants to the plaintiff? Answer yes or no, accordingly as you may find. The burden of proving that the plaintiff did so authorize the said P. H. Davis is on the defendants, W. F. Walker & Son." To this question the jury returned an affirmative answer, and the court thereupon entered a judgment in favor of Walker & Son.

[1, 2] The question before us is: Was the evidence sufficient to support that finding? As stated by the court in submitting this special issue, the burden of proving the agency of P. H. Davis for the purpose of collecting the debt from Walker & Son rested upon the appellees. The only testimony which even tended to show agency was that of one of the Walkers, who stated that P. H. Davis told him at the time he presented the account for collection that the claim had been placed in his hands for that purpose. That the declarations of the agent are incompetent to prove agency is so well settled that it is unnecessary to cite authorities.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

The verdict of the jury is clearly without evidence to support it.

[3] It is insisted, however, by the appellees that P. H. Davis had the legal authority, as a justice of the peace, to collect this debt under the circumstances, and that a payment to him was sufficient to discharge them from further liability. A cross-assignment of error is presented complaining of the action of the court in sustaining the general exception interposed by the sureties of Davis to that part of the answer which sought to hold them liable. It is difficult to see how Walker & Son could have any concern in fixing liability upon the bondsmen of P. H. Davis for the default of their principal, under the circumstances of this case. In order to hold the sureties liable for the failure of Davis to pay over the money which he received from Walker & Son, it was necessary to show that he received it in his official capacity. Heidenheimer v. Brent, 59 Tex. 533; State v. Griffith et al., 74 Ohio St. 80, 77 N. E. 686, 6 Ann. Cas. 917, and notes; Henderson County v. Richardson et al., 15 Tex. Civ. App. 699, 40 S. W. 38; Polk v. Peterson, 93 S. W. 504. If Davis did so receive it, that fact alone discharged Walker & Son from any further liability on the account, notwithstanding his failure to pay it over to the proper parties. On the other hand, the appellant has no just ground of complaint, because it pleaded no cause of action against the sureties. They were not, in fact, proper parties to this suit, and the court correctly discharged them. U. S. Fidelity Guaranty Co. v. Fossatti, 97 Tex. 497, 80 S. W. 74.

[4] But the question is: Did the court err in rendering the judgment he did, notwithstanding the insufficiency of the evidence to sustain the particular verdict that was returned? In other words, the facts being undisputed, does the evidence show a payment which legally discharged Walker & Son from further liability on the account? Or, to make the question more specific still, does the evidence show that P. H. Davis received the payment from Walker & Son in his official capacity as a justice of the peace? If he did, then it follows from what has been said Walker & Son are discharged from the debt; if he did not, they are still liable, and, under the facts, the court should have instructed a verdict against them.

In determining whether or not an officer performs an act in his official capacity, we must look to the various statutory and common-law requirements imposed and authority conferred upon him. If the law expressly, or by necessary implication, requires or authorizes the performance of the act in question, then it is an official act; otherwise it is not. The fact that the officer may assume official authority, or that some one in dealing with him may rely upon his official character and trust him solely because he is an officer, is of no consequence. Such an assumption on the part of the officer, or such reliance on the part of a private party, cannot make that an official act which is not such by law. When an officer acts officially he is the representative of the government or municipality to which he belongs in the particular undertaking, and he cannot claim such representative character except when performing those duties or exercising those powers which are prescribed by law. His sureties guarantee only the faithful discharge of his official duties, not his private or unofficial undertakings. We come, then, to the question: Is there any law which expressly or by necessary implication made it the duty of P. H. Davis, as a justice of the peace, to receive money in payment of claims placed in his hands for suit? A justice of the peace is a judicial officer, but he also has some ministerial duties to perform in connection with the exercise of his judicial functions. In filing papers, keeping his records, and issuing the various writs emanating from his court, he performs duties similar to those required of the clerks of the district and county courts. The statute requires him to give a bond with the following condition: "That he will faithfully and impartially * * * perform all the duties required of him by law, and that he will promptly pay over to the party entitled to receive it all moneys that may come into his hands during his term of office." Article 2283, Rev. Civ. Stat. 1911. Article 2322 provides as follows: "When a claim or demand is lodged with a justice of the peace for suit, it shall be his duty to issue forthwith a writ or citation for the defendant; and, if there be several defendants residing in different counties, one citation shall be issued to each of such counties." When Davis received through the mail from the appellant's attorneys the claim against Walker & Son, it was his legal duty to enter the case on his docket and issue the necessary citations to the defendants. It was no part of his duty to undertake to make a personal collection of the money from Walker & Son without suit.

We are referred to the dissenting opinion of Justice Fly in the case of Polk v. Peterson, supra, as holding directly to the contrary of what has just been announced. While the precise question here under consideration was not involved in that case, the dissenting justice used language which justifies the reference. He says that a justice of the peace is the only judicial officer required by our statute to give an official bond, and argues that, by reason of the conditions of that bond—that he will promptly pay over to the party entitled to receive it all moneys that may come into his hands during his term of office—it is contemplated by law that the justice of the peace may receive money belonging to other parties in his official capacity. From that he concludes that a justice of the

peace may, in his official capacity receive money on claims placed in his hands for collection by private parties, and that the sureties on his official bond are responsible for his failure to pay such money over to the parties entitled to receive it. We do not think this conclusion is a necessary deduction from the premises assumed. In the first place, a justice of the peace is not the only judicial officer required to execute an official bond. Article 1732 of the Revised Civil Statutes of 1911 makes it the duty of the county judge to execute a bond with the following conditions: "That he will pay over to the person, or officer, entitled to receive it, all moneys that may come into his hands as county judge, within thirty days after he shall receive the same." While the equivalent words, "as justice of the peace," are omitted from article 1911, which prescribes the conditions of the bond of a justice of the peace, yet we think they should be supplied in any legitimate construction of that article. This conclusion is sustained by the absurd consequences which would follow a literal application of the language of the statute. To illustrate: A justice of the peace may engage in the practice of law and the collection of claims either privately or through litigation in other courts in his county; yet no one could contend with any show of reason that the sureties on his official bond are responsible for his failure to pay over to his clients money which he had thus collected for them. We know of no statute which makes it the duty of a justice of the peace to act as a private collector of claims, or that makes his bondsmen responsible for such collections when made by him. There is a statute (article 7148) which provides that constables may, by giving an official receipt for a claim placed in their hands for collection, bind the sureties on their official bonds. But there is no such provision relating to a justice of the peace. There are many duties imposed by law on justices of the peace which make them custodians of funds belonging to other parties, or which should by them be paid over to other officers "entitled to receive it." In civil cases, for instance, a justice of the peace may collect costs that belong to other officials and witnesses, as well as jury fees, all of which must be paid over to the parties entitled to receive them. A justice of the peace may also become the custodian of funds paid into the registry of his court during the progress of a suit, to await its final determination. He has the power, and it is made his duty by the Code of Criminal Procedure, in certain instances to collect fines and forfeitures, which he must pay over to the county treasurer at stated intervals. It will thus appear that this provision of his bond which requires him "to pay over to the parties entitled to receive it all moneys that may come into his hands during his term of office" may be referred to these different duties, and there is no necessity for extending liability to private collections in order to give effect to that provision of the bond. It has been held that the district clerk has no authority to receive money on a judgment rendered in the court of which he is the clerk, and that, when he does so receive money his bondsmen are not liable for his misappropriation. Ry. Co. v. Walker, 93 Tex. 611, 57 S. W. 568. If a clerk cannot legally receive money paid on a judgment rendered in the court with which he is officially connected, we are at a loss to understand how a justice of the peace may do the same thing and claim it as an official act. The statute provides a method for collecting money due on judgments rendered in the justice courts, and it does not make the justice the depositary of the sums collected.

We not only think the court erred in submitting the issue to the jury, but that he should have instructed a verdict for the appellant.

The judgment is accordingly reversed and here rendered for the appellant; and all costs, both of this court and of the court below, are taxed against the appellees.