**STATE AMUSEMENT CO. v. TURRENTINE & THOMPSON. (No. 12192.)**

Court of Civil Appeals of Texas. Fort Worth. Oct. 5, 1929.

Slay & Simon, Hampden Spiller, and Cecil Rotsch, all of Fort Worth, for appellant.

Hyer & Christian and Robert O. Carson, all of Fort Worth, for appellees.

BUCK, J. This suit was filed by the partnership firm of Turrentine & Thompson, composed of C. A. Turrentine and Charles H. Thompson, engaged in the printing business, against the State Amusement Company, a corporation, engaged in the theater business. The defendant operated the Pantages Theater. The suit was for printing done by plaintiff, and alleged to be done for the defendant company.

The case was tried before the court without the intervention of a jury, and judgment was rendered for $196.20. From this judgment the defendant has appealed to this court.

The amount of the bill was $442.60. Cash payments amounting to $176.40 were made, and advertisements in the programs of plaintiff's business, amounting to $70 were credited, leaving a balance of $196.20, for which judgment was rendered.

Opinion.

The only material question involved in this appeal is the admission by the court of the declaration at the time of the purchase of Mrs. Thelma Goss, who purchased the printing from Mr. Charles H. Thompson, one of the partners, that she purchased the printing for the State Amusement Company. Charles H. Thompson testified that he had known Mrs. Goss previous to this transaction; that she was running the Ritz Theater for her husband; that she came by his place of business and told him that she had been appointed manager of the Pantages Theater; that she said, "Hocksworth has been giving our printing to Turner & Galloway, and I am going to see that you are going to get that work. We will have some regular weekly programs." Thompson further testified that he gave her a price and Mrs. Goss gave them the work; that he asked her the question if she was manager of the theater and she said she was and she purchased that morning some small theater envelopes and she said charge them to the Pantages Theater, and plaintiff mailed a statement to her. Defendant objected to this testimony, on the ground that the agency of a purported agent could not be proven by the declarations of the purported agent herself, unless said declarations were made by such purported agent as a witness. The court overruled the objection and admitted the testimony.

Findings of fact and conclusions of law were filed by the court, in which the court said:

"3. That Mrs. Thelma Goss was, during the months of February, March and April, 1927, the House Manager of said Pantages Theater and was authorized by the defendant State Amusement Company to purchase for and in behalf of defendant supplies for the said theater, including printing matter, such as was furnished by plaintiffs to defendant as hereinafter set out.

"4. That during the months of February, March and April, 1927, the said Mrs. Thelma Goss, acting for and in behalf of the defendant, State Amusement Company, ordered the plaintiffs to prepare and print for the said State Amusement Company to be used in said Pantages Theater, a number of programs, color plates, statements, cuts and stickers, bill heads and ticket envelopes, and pursuant to said order plaintiffs delivered to the said Pantages Theater the said printed matter on the dates, and in the amounts and at the prices as follows:

| 1927 | | |
|---|---|---|
| Feb. 25. | 3,500 programs | $ 55 00 |
| " | 1 set 2 color plates | 25 00 |
| " | 25 statements | 3 00 |
| " | 3,500 programs | 55 00 |
| " | 1 mortise cut | 35 |
| " | 3,500 programs | 55 00 |
| " | 2 cuts mounted | 1 00 |
| " | 2,000 stickers | 7 40 |
| 28. | 3,500 programs | 55 00 |
| Mar. 7. | 250 bill heads | 4 75 |
| 14. | 3,500 programs | 55 00 |
| 28. | 3,500 programs | 38 70 |
| " | 3,500 programs | 38 70 |
| " | 3,500 programs | 38 70 |
| Apr. 28. | 5,000 ticket envelopes | 10 00 |
| | | $442 60 |

"That said Mrs. Thelma Goss, acting for and in behalf of the defendant State Amusement Company, promised to pay plaintiffs the said prices for said printed matter.

"5. That the said printed matter was used by the defendant, State Amusement Company, in the said Pantages Theater and in connection with the operation thereof.

"6. That the total amount of the prices agreed to be paid for said printed matter was $442.60, on which amount defendant is entitled to a credit of $178.40 on account of payments made on said account, and to a further credit of $70.00 on account of advertising for said plaintiffs in the programs of said theater. That with the exception of said credits defendant has made no payments to the plaintiffs on said account and is not entitled to any additional credits."

█ It is a well-settled rule of law that the declarations of an alleged agent are not admissible against the alleged principal to prove agency or to show the extent of the purported agent's authority. In Bray-Robinson-Curry Woolen Mills v. W. F. Walker & Son, 165 S. W. 107, 108, the Texarkana Court of Civil Appeals said: "The only testimony which even tended to show agency was that of one of the Walkers, who stated that P. H. Davis told him at the time he presented the account for collection that the claim had been placed in his hands for that purpose. That the declarations of the agent are incompetent to prove agency is so well settled that it is unnecessary to cite authorities."

In Rupert v. Brook Mays & Co., 299 S. W. 474, 475, by the Dallas Court of Civil Appeals, it is said: "The fact of agency cannot be established by this character of evidence. It is never permissible to prove agency or authority to bind another by the declarations and statements of the alleged agent or representative made at some previous time. Alamo Live Stock Commission Co. v. Heimer (Tex. Civ. App.) 192 S. W. 591, and authorities there cited; Dawson v. Nunn (Tex. Civ. App.) 200 S. W. 603."

In T. H. Baker & Co. v. Kellett-Chatham Machinery Co., 84 S. W. 661, 662, by the San Antonio Court of Civil Appeals, it is said: "Persons dealing with an assumed agent, * * * are bound, at their peril, to ascertain not only the fact of the agency, but the extent of his authority; and, in case either is controverted, the burden of proof is upon them to establish it," citing authorities.

In 2 Corpus Juris, p. 940, § 696ee, it is said: "Although the acts and declarations of the agent are incompetent to establish the agency, they are admissible to prove that the agent believed himself to be the agent of a particular principal, and so held himself out, and that the third person dealt with him as such in good faith."

In Mechem on Agency, vol. 1, p. 205, § 285, 1914 Ed., it is said: "The authority of an agent, and its nature and extent where these questions are directly involved, can only be established by tracing it to its source in some word or act of the alleged principal. The agent certainly cannot confer authority upon himself or make himself agent merely by saying that he is one. Evidence of his own statements, declarations or admissions, made out of court therefore (as distinguished from his *testimony* as a witness), is not admissible against his principal for the purpose of establishing, enlarging or renewing his authority; nor can his authority be established by showing that he acted as agent or that he claimed to have the powers which he assumed to exercise. His written statements and admissions are as objectionable as his oral ones, and his letters, telegrams, advertisements and other writings cannot be used as evidence of his agency."

In Madeley v. Kellum, 135 S. W. 659, by the Austin Court of Civil Appeals, it is said, in effect, that the admissions of acts, declarations, or statements of an alleged agent for the purpose of proving the agency is erroneous in the absence of other evidence.

To the same effect is Cannel Coal Co. v. Luna, 144 S. W. 721, by the San Antonio Court of Civil Appeals.

This case was tried before the court, and, if there was other evidence justifying the

court in concluding that Mrs. Goss was in fact the agent of the State Amusement Company and said company authorized its said agent to purchase the printing involved, we would be inclined to hold that the admission of the declaration that she was in fact the agent would not be reversible error. But Mr. U. M. Simon, president of defendant company, testified positively that Mrs. Goss had no authority to incur any obligations. He explained that the defendant company furnished the theater building and the Gene Lewis Company furnished the productions; that the proceeds were divided equally; that Mrs. Goss was employed by the defendant for the purpose of checking the receipts between the defendant and Gene Lewis; and that Mrs. Goss had no authority to order programs or any other printed matter for the defendant company.

Mrs. Goss testified by deposition that: "The State Amusement Company had nothing to do with the printing of programs * * * I had these programs printed on my own account."

The defendant Thompson admitted that aside from her own declarations he had no other evidence of Mrs. Goss being manager of the theater. There is some evidence that, as to two of the items of printing done by the plaintiff for Mrs. Goss, the defendant company issued its check in payment therefor. Mrs. Harris, bookkeeper for the State Amusement Company, and also working in the office of Slay, Simon & Smith, testified that she paid by check $7.40 for some 2,000 "stickers" printed by Turrentine & Thompson, and also paid $1.80 for some small envelopes to put tickets in at the window; that she never paid any bills amounting to more than $2 without asking Mr. Simon, the president; that she took up with him the matter of paying the checks for $1.80 and $7.40 and he authorized the payment thereof; that she told Mrs. Goss to buy the envelopes; and that the only time she heard of Turrentine & Thompson's bill was the week the theater was closed under the Gene Lewis contract, and was about the time Mrs. Goss left Fort Worth, or about the time she severed her connection with the State Amusement Company.

There was other evidence that Turrentine & Thompson had tried to collect the bill from Mrs. Goss after she left Fort Worth, and while she was in Memphis, Tenn., through a firm of lawyers there, and that said lawyers had collected a part of it.

Mrs. Goss testified that she did tell Turrentine & Thompson that she was handling the programs on her own account, and that she made payments on this bill after she went to Memphis, one on April 16 and one on May 5, 1927; that she never heard Mr. Simon say anything to Turrentine & Thompson, or any one representing them, about whether or not the State Amusement Company would be responsible for the cost of printing these programs; that she had made an arrangement with Gene Lewis to have printed the advertising matter used by the theater, and she was to get advertisements from the merchants to pay for the printing, and expected to make a profit.

■■ Since there is no evidence in the record authorizing the court to find that Mrs. Goss in making the contract for the printing was the agent of the State Amusement Company, except her statement alleged to have been made to Charles H. Thompson and objected to, we conclude that the admission of said testimony was reversible error. Where there is evidence aliunde from which a jury could find agency, the declarations of the agent, made during the agency, in regard to the transaction connected therewith, are admissible as the declarations of the principal, but not to prove agency. G. C. & S. A. Ry. Co. v. Cunningham, 51 Tex. Civ. App. 368, 113 S. W. 767, 775, by the Austin Court of Civil Appeals. But where there is no evidence outside and beyond the alleged declaration tending to show agency on the part of one incurring an indebtedness for the alleged principal, we think it is reversible error to admit over objection the declaration of the purported agent made at the time of the purchase of the goods, since in no event would such evidence be admissible except to prove to whom credit was extended.

For the reasons stated, the judgment of the trial court is reversed, and the cause is remanded for another trial not inconsistent with this opinion.

CONNER, C. J. I concur in the reversal of the judgment of the trial court, not on the ground that there was reversible error in *admitting* in evidence the declaration discussed, but on the ground that there is no legal proof of the fact of the declarant's alleged agency. I think the declaration was admissible, not as proof of agency, but as part of the res gestæ, to show to whom the credit was extended, and the good faith of the plaintiff in the action.