KIMBROUGH et al. v. BEVERING.
(No. 8279.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 27, 1915. Rehearing Denied Jan. 8, 1916.)

1. SHERIFFS AND CONSTABLES ⬤⟶157—UNOFFICIAL CHARACTER OF SEIZURE.

Where a constable, under direction of his writ of execution, levied upon and sold 39 bales of cotton as the property of a tenant farmer, making due return, and thereafter he took into his actual possession four bales of the cotton, which had been sold, as specified in his return, such seizure was not an official act and the sureties on his bond as constable, who had bound themselves only for the faithful performance of his official acts, were not liable therefor.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. §§ 354–371; Dec. Dig. ⬤⟶157.]

2. EXECUTION ⬤⟶461—UNAUTHORIZED CHARACTER—LEVY AFTER SALE BY DEBTOR.

For an unauthorized levy of execution against a tenant farmer on cotton which the

latter had sold to the landlord, the landlord was entitled to recover the value of all cotton appropriated by virtue of the execution and levy, whenever and by whomsoever the appropriation was made.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1387, 1388; Dec. Dig. ☞461.]

3. SHERIFFS AND CONSTABLES ☞157 — UNAUTHORIZED LEVY—LIABILITY ON BOND.

Under Rev. St. 1911, art. 5475, giving a landlord a preference lien on his tenant's crop to secure his advances to enable the tenant to make such crop, where execution against a tenant farmer was levied on 39 bales of cotton, to enable him to make which the landlord had made advances, there being $200 or $300 yet due him at the time of the levy, such levy and the sale thereunder by the constable was unauthorized as against the landlord, and a later actual seizure of four bales of the cotton by the buyer at execution sale or by his agent, whether the constable who made the levy or another, was unlawful, and amounted to a conversion for which the landlord could recover; the legal wrong relating back to the levy and rendering the constable and his sureties liable.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. §§ 354–371; Dec. Dig. ☞157.]

4. EXECUTION ☞191 — LEVY ON PROPERTY NOT WHOLLY THE DEBTOR'S—STATUTE.

By direct provision of Vernon's Sayles' Ann. Civ. St. 1914, art. 3740, levying on and sale under execution of property in which the debtor has merely an interest, without right to exclusive possession, is made by giving notice to the person entitled to the possession, and a levy made by taking actual possession cannot stand as legal on the ground that the debtor had an interest in the property, though not exclusive.

[Ed. Note.—For other cases, see Execution, Cent. Dig. § 566; Dec. Dig. ☞191.]

5. EXECUTION ☞268 — LEVY ON PLEDGED CROP—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 3744, providing that chattels pledged, assigned, or mortgaged as security may be levied upon or sold on execution against the pledgor, etc., and that the purchaser shall be entitled to the possession, when it is held by the pledgee, on complying with the condition of the pledge, where a tenant farmer pledged his half interest in a cotton crop to the landlord to secure advances, a judgment creditor of the tenant, who levied execution upon the cotton in the tenant's hands, buying thereunder, was not entitled to its possession without a compliance with the conditions of the pledge, since the landlord was at least in the position of a mortgagee in possession under a pledge on the tenant's part that the proceeds of his interest in the cotton should be applied to payment of his debt to the landlord.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 762–767; Dec. Dig. ☞268.]

6. ASSIGNMENTS FOR BENEFIT OF CREDITORS ☞52—CHARACTER OF TRANSACTION—STATUTE.

Where a tenant orally agreed with his landlord that the latter should pay for completing and sell the tenant's cotton crop and apply the proceeds to reduction of the tenant's debt to the landlord for advances to make it, accounting to the tenant for any excess, the transaction was not within Rev. St. 1911, art. 91, requiring assignments by insolvent debtors for the benefit of creditors to be in writing.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. § 212; Dec. Dig. ☞52.]

Appeal from District Court, Clay County; W. T. Allen, Judge.

Action by August Bevering against J. B. Kimbrough and others. From a judgment for plaintiff, defendants appeal. Affirmed.

C. M. McFarland, of Wichita Falls, for appellants. Arnold & Taylor, of Henrietta, for appellee.

CONNER, C. J. J. B. Kimbrough, as constable of precinct No. 2, Clay county, and J. M. King, W. A. Duncan, and J. B. Wright, as the sureties on his official bond, suffered a judgment, from which they have appealed, in favor of August Bevering, appellee, in the sum of $148.83, for the conversion of four bales of cotton. The alleged conversion, as presented in the pleadings and as shown in the evidence, arose in substantially the following way: J. C. Hunt in Wichita county secured a judgment against J. Davis, a farm tenant of appellee in Clay county. By virtue of this judgment an alias execution was issued, and the same was by J. B. Kimbrough, as constable of said precinct No. 2, levied upon some 39 bales of cotton as the property of said J. Davis. In the answer of the defendant it was admitted that the levy and sale was as shown by the return of the constable on his execution. This return recites that the execution came to hand and was executed by taking the cotton, which was specifically described, into his possession, after which—

"he [the constable] sold all of the right, title, and interest of the said J. Davis in and to said property to J. C. Hunt," etc.

The return also stated that after the sale, the cotton had been delivered to the plaintiff in the execution, J. C. Hunt. The record shows that the constable made his return on the 28th day of November, 1914. On the 5th day of the following month it appears from the evidence that Kimbrough, as the defendants alleged and insist, acting for J. C. Hunt in an individual capacity and not as constable, proceeded to take into his actual possession four bales of the cotton which had been theretofore sold as specified in the constable's return, and shipped the same to J. C. Hunt at Wichita Falls. It does not clearly appear in the evidence, other than as recited in the constable's return, that at the time of the sale of the cotton the possession of either J. Davis or of appellee, the landlord, was disturbed. But at all events, it further appears that in some way Bevering had either retained, or had obtained actual possession of the cotton after the constable's sale. Other circumstances will be hereinafter stated in their proper connection.

[1] It is first insisted that the judgment against the sureties on the constable's bond is without any evidence to support it in that, as contended, the uncontradicted evidence shows that in seizing the four bales of cot-

ton in controversy, the constable was acting, not as an officer, but as a representative merely of J. C. Hunt. Appellee earnestly controverts this contention, and insists that in seizing the cotton Kimbrough was but carrying out and completing the official acts by him committed prior to that time. There seems, however, but little, if any, contradiction, ·of the constable's testimony on this point, and it being undisputed that prior thereto the direction of the writ had been executed and due return made thereof, the constable's duty as an officer was ended, and he could no longer act as an officer by virtue of the writ. This being true, if this was the sole basis of the plaintiff's right to recover, it would certainly seem that the sureties on the constable's bond should be relieved, for it was for the faithful performance of his official acts only that they bound themselves. See Revised Statutes 1911, art. 7141; Holliman v. Carroll's Adm'rs, 27 Tex. 23, 84 Am. Dec. 606; Heidenheimer v. Brent, 59 Tex. 533; Brent v. Hohorst, 1 White & W. Civ. Cas. Ct. App. § 343; Sneed v. McFatridge, 43 Tex. Civ. App. 592, 97 S. W. 113; Stewart v. Gordon, 65 Tex. 344; Goldman v. Spann, 173 S. W. 1015.

[2, 3] We are of opinion, however, that the issue suggested was an immaterial one, and that the judgment must be maintained upon a different theory. The following facts seem to be substantially undisputed, except as hereafter otherwise indicated: J. Davis for the year 1914 was a tenant upon the farm of appellee, Bevering, under a contract by virtue of which ·Davis was to receive one-half and Bevering the other one-half of all cotton grown upon the premises during the year. Davis and Bevering both testified—and there is no contradiction in this respect—that about the beginning of the cotton picking period Davis contemplated giving up his crop, but he finally agreed, at Bevering's suggestion, that he, Davis, would continue gathering the crop, Bevering to pay for the services of all cotton pickers except that of Davis himself, and continue furnishing him supplies as he had theretofore done; that pursuant to this agreement Davis turned the crop over to Bevering. They both specifically so testified without contradiction, and they further insist that it was a sale of the cotton. In this connection, however, it was further agreed between them that at the conclusion of the season Bevering would sell the cotton, and if Davis' one-half of the proceeds should be more than sufficient to pay Bevering for advances that had been theretofore made, that then he (Bevering) would give to such Davis any excess that existed. If this transaction in fact amounted to a sale, as both Bevering and Davis insisted in their testimony, then it must be admitted, without citation of authority, we think, that the levy of the execution against Davis upon the cotton was an unauthorized levy. In such case, the true owner, Bevering, would be entitled to a recovery for the value of all cotton that may have been appropriated by virtue of the execution and levy, whenever and by whomsoever the appropriation may have been made. But whether this transaction between Davis and Bevering amounted to a sale or not, in our view of the matter, is immaterial, for it is undisputed that Bevering, as landlord, had made large advances to ꞏDavis, and as such landlord, and to secure said advances, Bevering undoubtedly was entitled to the landlord's lien, as provided in our statutes. This lien is a preference lien, having priority over all other liens. See Revised Statutes, art. 5475. Bevering, therefore, at the date of the levy of the execution had a lien (whether in possession or not) upon all of the cotton levied upon in order to secure all advances made by Bevering to enable Davis to make the crop. Bevering testified upon the trial that after the sale of the cotton there yet remained due from Davis to him on account of such advances some $200 or $300. So that, whatever view of the facts may be taken, the levy and sale by the constable was unauthorized as against Bevering, and the later actual appropriation of four bales of this cotton, by virtue of said execution sale, whether by J. C. Hunt in person or by any agent, either J. B. Kimbrough or another, was unlawful, and amounted to a conversion for which Bevering was entitled to recover. The legal wrong done Bevering did not have its inception at the time of the actual appropriation, but related back to the unlawful levy and sale under the execution. These acts, which were undoubtedly official, constituted the true basis of Bevering's right to recover. At the time of the levy and sale Bevering was at least in the attitude of lienholder, or mortgagee, in possession, and as such did, at all events, have the right to sue for possession or as for a conversion. See Jones on Chattel Mortgages, §§ 447, 448, 449, 452; Taylor v. Felder, 5 Tex. Civ. App. 417, 23 S. W. 480, 24 S. W. 313; Newman v. Ward, 46 S. W. 868.

[4, 5] Another contention of appellants is that the evidence, to which we have hereinbefore referred, shows that Davis at least had an interest in the property and hence that the levy was an authorized one, but if this construction of the facts be adopted, we will add, in addition to what we have already said as to the effect of Bevering's right under a landlord's lien, that the levy and sale was not made as ·provided by statute, where merely an interest, without right to the exclusive possession, is shown. In such case the statute provides that the levy is made by giving notice thereof to the person who is entitled to the possession. See Vernon's Sayles' Texas Civil Statutes, art. 3740. It is not pretended that this was done in the present case. The return of the officer shows that the levy was made by taking actual possession. Another article of the statute (arti-

cle 3744) provides that chattels pledged, assigned, or mortgaged as security for any debt or contract may be levied upon and sold on execution against the person making the pledge, assignment, or mortgage subject thereto, and that the purchaser shall be entitled to the possession when it is held by the pledgee, assignee, or mortgagee on complying with the condition of the pledge, assignment, or mortgage. Bevering was at least in the position of a mortgagee in possession under a pledge on the part of J. Davis that the proceeds of his interest in the cotton should be applied to the payment of his debt to Bevering, and Hunt, the plaintiff in execution, was in no event entitled to the possession of the cotton, or of any interest therein, without a compliance with the conditions upon which Davis pledged the cotton to his landlord. It is not contended that Hunt made any effort to do this.

[6] The contention that the transactions between Davis and appellee, Bevering, amounted to no more than an assignment, which was void under the operation of Revised Statutes, art. 91, because not in writing, we think need not be discussed seriously, inasmuch as it seems to us manifest that the transaction in no event can be construed as an assignment for the benefit of creditors under the statute referred to.

We conclude that the judgment must be affirmed.