### JEFF DAVIS COUNTY v. DAVIS et al.
#### (No. 629.)

(Court of Civil Appeals of Texas. El Paso. Jan. 18, 1917. On Motion for Rehearing and to Certify, Feb. 15, 1917.)

1. SHERIFFS AND CONSTABLES ⬤⟹158 — LIABILITY OF SURETY—STRICT CONSTRUCTION.

The liability of sureties on a sheriff's bond is a matter of strict law, and cannot be extended by implication or intendment.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. §§ 354–371.]

2. SHERIFFS AND CONSTABLES ⬤⟹157(5)—LIABILITY OF SURETIES.

The sureties on a sheriff's bond conditioned that he would faithfully perform all such duties as might be required of him by law were not liable to the county for moneys paid the sheriff on claims presented by him for postage stamps used in official business, for expenses incurred by him for telephone services in transacting official business, for the hire of automobiles used in the transaction of his official business, or for the expense of a trip to attend a meeting of the sheriffs' association, since the bond did not cover the sheriff's liability to refund to the county moneys paid to him under orders of the commissioners' court upon claims which under no circumstances could be lawfully collected from the county.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. §§ 365–369.]

3. SHERIFFS AND CONSTABLES ⬤⟹97—IMPROPER RECEIPTS—LIABILITY TO REFUND.

A sheriff who received county moneys under orders of the commissioners' court upon claims which under no circumstances he could lawfully collect from the county was liable to refund such moneys on an implied contract as for money unlawfully had and received.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. §§ 137–141.]

4. SHERIFFS AND CONSTABLES ⬤⟹157(5)—LIABILITY OF SURETIES.

In view of Rev. St. 1911, art. 3866, providing that for summoning jurors in district and county courts, serving all election notices, and doing all other public business not otherwise provided for, the sheriff may receive annually not exceeding $500, to be fixed by the commissioners' court at the same time other ex officio salaries are fixed, where a salary was allowed and paid a sheriff as compensation for summoning jurors, etc., the sureties on his official bond, conditioned that he would faithfully perform all such duties as might be required of him by law, were not liable for moneys paid him on claims for attending the sessions of the commissioners' court, and on claims for serving notices of election, and for other expenses incurred in connection with the holding of elections in the county, since the further compensation allowed and paid the sheriff over his salary was without lawful authority, and beyond the scope of his office.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. §§ 365–369.]

5. SHERIFFS AND CONSTABLES ⬤⟹157(5)—LIABILITY OF SURETIES.

In view of Vernon's Sayles' Ann. Civ. St. 1914, art. 7127, providing that whenever in any county it may become necessary to employ jail guards the sheriff may, with the approval of the commissioners' court, employ such number of

guards as may be necessary, and his account therefor, duly itemized and sworn to, shall be allowed by the commissioners' court, and paid out of the county treasury, and Code Cr. Proc. 1911, art. 1148, providing that at each regular term of the commissioners' court the sheriff shall present his account for the expenses of keeping, supporting, and maintaining prisoners and guards, where the sheriff of a county procured payments to him for moneys expended on account of jail guards, whereas he had actually employed none, the sureties on his official bond, conditioned that he would faithfully perform all such duties as might be required of him by law, were liable to the county for such money; the presentation of the false and fraudulent account and accepting payment therefor being official misconduct violating the terms of the bond.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. §§ 365–369.]

6. COUNTIES ⊙⟞75(2)—ALLOWANCE OF SHERIFF'S CLAIMS BY COMMISSIONERS' COURT — CONCLUSIVENESS — STATUTE — "ADJUST" — "SETTLE."

Under Rev. St. 1911, art. 2241, subd. 8, conferring on commissioners' courts the power and making it their duty to audit and adjust all accounts against the county and direct their payment, as amended by Acts 32d Leg. c. 116 (Vernon's Sayles' Ann. Civ. St. 1914, art. 2241), eliminating the word "adjust," the commissioners' court of a county had jurisdiction and authority to settle all accounts against the county presented by the sheriff for jail guard hire, and to direct their payment or reject them, as the facts might warrant, its action in so doing being conclusive, and not reviewable except by the district court under its appellate jurisdiction, the district court having no authority to review and set aside the action of the commissioners' court with respect to such matters in a collateral proceeding, such as an action by the county against the sheriff and his sureties to recover payments made for hire of jail guards which the sheriff had never employed, since the elimination of the word "adjust" from the statute did not alter its meaning; "adjust" and "settle" being synonyms.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 134.

For other definitions, see Words and Phrases, First and Second Series, Adjust; Settle.]

7. COUNTIES ⊙⟞75(1)—ALLOWANCE OF SHERIFF'S CLAIMS—JURISDICTION.

Where the items of account allowed to a sheriff by the commissioners' court could not under any circumstances have been proper charges against the county, the want of authority on the part of the commissioners' court to allow them was jurisdictional, so that its action in so doing had no conclusive effect.

8. COUNTIES ⊙⟞75(1)—ALLOWANCE OF SHERIFF'S CLAIMS—JURISDICTION.

The action of the commissioners' court of a county in allowing to a sheriff claims for attending commissioners' court, serving notices of election, etc., when his compensation for such services was limited to the annual salary paid him under Rev. St. 1911, art. 3866, was void, and had no conclusive or final effect; the court's want of authority being jurisdictional.

9. COUNTIES ⊙⟞75(1)—ALLOWANCE OF SHERIFF'S CLAIMS—JURISDICTION.

The lack of merit in a sheriff's claims against a county, and want of proper form in the account, as it was presented to the commissioners' court, did not impair the jurisdiction and authority of the court to pass on the claim and allow or reject it as it deemed proper.

10. COUNTIES ⊙⟞75(1)—COLLATERAL IMPEACHMENT—MISTAKE OF FACT.

A judgment of the commissioners' court of a county, allowing certain accounts of the sheriff could not be collaterally impeached merely because it was based on a mistake of fact and made by the court without knowledge of the law.

11. COUNTIES ⊙⟞75(1)—COLLATERAL ATTACK —PERJURED TESTIMONY.

In an action by a county against a sheriff and his sureties to recover amounts of county moneys paid the sheriff, the orders of the commissioners' court allowing the sheriff's claims and ordering them paid were conclusive, though procured by false and fraudulent representations made by the sheriff to the court, since a judgment cannot be collaterally attacked on the ground it was procured by perjured testimony.

12. LIMITATION OF ACTIONS ⊙⟞22(8), 33 — SHERIFF'S LIABILITY TO COUNTY.

The two-year statute of limitation applied with respect to the liability of a sheriff to the county on an implied contract to refund county moneys had and received by him and to which he could in no event be entitled, and the four-year statute applied to his and his sureties' liability on his official bond to refund amounts paid him on his false claim for the hire of jail guards which he had not in fact employed.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 109.]

On Motion to Certify.

13. COURTS ⊙⟞247(6)—CERTIFICATION TO SUPREME COURT—WITHDRAWAL OF DISSENT.

Where a dissenting justice of the Court of Appeals withdraws his dissent, appellant is not entitled to certification to the Supreme Court on account of the dissent.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 751; Appeal and Error, Cent. Dig. § 1773.]

Appeal from District Court, Jeff Davis County; Joseph Jones, Judge.

Suit by Jeff Davis County against J. B. Davis and others. From a judgment for the County for a limited amount, it appeals. Cause affirmed.

C. E. Mead, of Marfa, and J. R. Hill, of Alpine, for appellant. Hudspeth, Dale & Harper, of El Paso, for appellees.

HIGGINS, J. J. B. Davis was sheriff of Jeff Davis county from November, 1904, until November, 1914. During that time various sums of money were paid to him out of county funds upon orders of the commissioners' court of the county in payment of claims against the county presented by Davis in his capacity as sheriff. This suit was filed by the county against Davis and the sureties upon the official bonds given by him during his incumbency of the sheriff's office to recover such moneys. It was alleged that during Davis' several terms of office the commissioners' court allowed various claims presented by him as sheriff against the county and ordered same paid; that the claims were not just and legal ones against the county, in some instances being for services for

which the law did not authorize the county to pay the sheriff, and in other instances the amounts allowed and paid were in excess of the amounts allowed by law. One of the items upon which recovery was sought was for sums of money allowed by the commissioners' court and paid for jail guards. It was alleged that no jail guards were employed by Davis as sheriff, and that the moneys allowed and paid to him for that purpose were appropriated by him to his use and benefit. With reference to the jail guard items these allegations were made:

"In regard to the several sums paid the defendant J. B. Davis for jail guards as aforesaid, plaintiff makes the following distinct allegations:

"(A) It was never necessary at any time during the time defendant J. B. Davis served as sheriff aforesaid to employ jail guards or any other guards for the safe keeping of prisoners in his care and custody or for the safe-keeping of plaintiff's jail.

"(B) That no emergency in regard thereto ever existed and that no judge of Jeff Davis county ever authorized the defendant to employ such guards or approved the employment thereof.

"(C) That the commissioners' court of Jeff Davis county never authorized the defendant to employ such guards or approved the employment thereof.

"(D) That during most of the time in which defendant J. B. Davis was sheriff of Jeff Davis county and for which he charged and collected from plaintiff the sum of $1.50 per day for jail guards there were no prisoners in his care and custody or confined in the jail of said county.

"(E) That, as a matter of fact, the defendant J. B. Davis did not at any time employ jail guards or any other guards, but that he falsely and fraudulently represented to the commissioners' court of Jeff Davis county that he had done so.

"(F) That, as a matter of fact, none of the several sums of money paid to the defendant J. B. Davis as jail guards as aforesaid or any other sums was ever paid to any one for services as guards or jail guards, and in fact no one ever served Jeff Davis county in such capacity, and that the defendant J. B. Davis appropriated said several sums for his own use and benefit.

"(G) That the several claims presented to the commissioners' court of Jeff Davis county by the defendant J. B. Davis for jail guards as aforesaid are not such claims as the plaintiff is bound by law to pay, and that they were not presented to said court in a form and manner sufficient to invoke the jurisdiction of said court, and all the acts of said court in approving, allowing, and ordering them paid out of the funds of Jeff Davis county are without the authority of law, unauthorized, void, and of no effect.

"(H) That said court in approving, allowing, and ordering said claims paid out of the funds of Jeff Davis county acted in good faith, but under a mistake of fact and without a knowledge of the law, and said claim being such the payment of which plaintiff was not in law bound, their acts in approving, allowing, and ordering them paid out of the funds of the county, as well as the payment thereof, are unauthorized, without the warrant of law, and unlawful."

And in a trial amendment these additional allegations were made respecting the jail guard items, viz.:

"Because said bills and claims were not made in the form and manner required by article 1148 of the Code of Criminal Procedure of the State of Texas 1911, in the following particulars, to wit:

"(1) Because said bills and claims did not state the name of the prisoner or prisoners for whose care and safe keeping said guard was employed, if any there were.

"(2) Because they did not give or set out each item of expense incurred in the safe-keeping of said prisoners, if any there were, nor the date thereof.

"(3) Because said several bills and claims did not give names of each guard so employed, if any there were, nor the length of time said guards were thus employed, nor the purpose of such employment."

The items upon which a recovery was sought, for convenience, will be grouped as follows:

(1) For moneys paid on claims presented for postage stamps used by the sheriff in his official business; for expenses incurred by him for telephone service in transacting official business; for the hire of automobiles used in the transaction of his official business; expenses of a trip to San Antonio to attend a meeting of the sheriffs' association.

(2) For moneys paid on claims for attending upon the sessions of the commissioners' court at rate of $2 per day and on claims for serving notices of election and other expenses incurred in connection with the holding of elections in the county.

(3) For moneys paid on account of jail guards as aforesaid.

It was alleged that an annual sum ($300 from November, 1904, to May, 1907, and thereafter $400) was allowed and paid Davis as ex officio compensation for summoning jurors, serving election notices, notices to road overseers, and doing all other public business not otherwise provided for.

Davis and the sureties presented certain exceptions to the petition which were sustained. The exception of the sureties was based upon the theory that the liability of Davis, if any, was not based upon his official bond, and that therefore the sureties were not liable. The exceptions of Davis presented two theories, viz.:

(1) That the items upon which recovery was sought were barred by the two-year statute of limitation.

(2) That the action of the commissioners' court in allowing and ordering paid the claims for jail guards was conclusive and could not be attacked in this collateral proceeding.

The sureties were dismissed upon the sustaining of the exception presented by them. The effect of sustaining Davis' exceptions was to eliminate most of the items upon which a recovery against him was sought. After the exceptions indicated were sustained, the cause proceeded to trial before the court without a jury and judgment was ren-

dered in favor of the county against Davis in the sum of $214.10. From this judgment the county appeals, assigning as error the court's action in sustaining the exceptions. The appeal presents only three questions, viz.:

(1) Are the sureties upon Davis' official bond liable to the county for the items enumerated?

(2) Was the action of the commissioners' court conclusive and final in allowing the claims for jail guards and ordering same paid so as to preclude inquiry into the correctness of its action in so doing in this collateral proceeding?

(3) Does the two or four year statute of limitation apply to the recovery sought herein?

These questions will be disposed of in the order in which they are stated.

The official bond of a sheriff is conditioned:

"That he will account for and pay over to the persons authorized by law to receive the same all fines, forfeitures, and penalties that he may collect for the use of the state or any county, and that he will well and truly execute and due return make of all process and precepts to him lawfully directed, and pay over all sums of money collected by him by virtue of any such process or precept to the persons to whom the same are due, or their lawful attorney, and that he will faithfully perform all such duties as may be required of him by law."

[1] It requires no argument to demonstrate that the sheriff's bond does not cover any of the items sued for unless they be embraced within the scope of the provision:

"That he will faithfully perform all such duties as may be required of him by law."

In determining the scope of this provision, as it affects the rights of the sureties, it may be noted at the outset that:

"The liability of sureties is a matter of strict law, and cannot be extended by implication or intendment." State v. Evans, 32 Tex. 201; Wood et al. v. Hollander, 84 Tex. 394, 19 S. W. 551.

In 2 Brandt on Suretyship & Guaranty (3d Ed.) par. 627, it is said:

"The sureties on an official bond are, as a general rule, only liable for such sums of money as their principal may lawfully receive by virtue of his office."

And in Heidenheimer v. Brent, 59 Tex. 533, it was said:

"To charge the sureties on a sheriff's bond, the act complained of must not only be one which he might rightfully do as sheriff, but which must be actually done by him as sheriff, under a claim of right to do the act as such officer."

This statement of the law is the application of a rule by which the acts of a sheriff for which his sureties may be held liable can be distinguished from those acts for which they will not be held liable. The former are termed acts done "virtute officii," and the latter "colore officii." The distinction is this: Acts done "virtute officii" are when they are within the authority of the officer, but when in the doing he exercises that authority improperly, or abuses the confidence which the law reposes in him; whilst acts done "colore

officii" are where they are of such nature the office gives him no authority to do them. Gold v. Campbell, 54 Tex. Civ. App. 269, 117 S. W. 463, at 468.

[2, 3] The items enumerated in the first group were very clearly claims which were in no sense proper claims against the county, and under no circumstances could they be so regarded. The claims were presented and collected by color of his office, but they were allowed by the commissioners' court and collected by Davis without a vestige of legal authority so to do. Davis could not lawfully or rightfully collect the same, and under the rule stated the sureties cannot be held therefor in a suit to recover the moneys so paid. It would be a very strained and far-fetched construction of the language of the bond to hold that it covered the liability of Davis to refund to the county moneys which had been paid to him under orders of the commissioners' court upon claims which under no circumstances could be rightfully collected from the county. The items in subdivision 1 covered simply items of expense incurred by Davis in the discharge of the duties of his office. It was an expense which properly fell upon him personally, and if the commissioners' court saw fit to reimburse him for that personal expense, the sureties could not be held liable therefor in a subsequent suit by the county to recover it. Davis was liable to refund the same to the county, but his liability was not by virtue of any obligation upon his official bond, because the terms of the bond did not embrace a liability of that nature. His liability arose upon an implied contract to refund the same as for money unlawfully had and received from the county.

[4] The same consideration and rule applies to the items enumerated in the second group in view of the allegation that a salary was allowed and paid Davis as compensation for summoning jurors, serving election notices, notices to road overseers, and doing all other public business not otherwise provided for.

Article 3866, R. S., provides:

"Compensation for Ex Officio Services.—For summoning jurors in district and county courts, serving all election notices, notices to overseers of roads and doing all other public business not otherwise provided for, the sheriff may receive annually not exceeding five hundred dollars, to be fixed by the commissioners' court at the same time other ex officio salaries are fixed."

The allowance and payment of a salary to Davis under the provisions of this article exhausted the power and authority of the commissioners' court to compensate him for the items in the second group, and any further compensation allowed and paid was without lawful authority, and the status of the parties with respect to the right of the county to recover the sums so paid rests upon the same footing and is governed by the same principles and rules as applies to the items in the first group. The status of the items in this second group will be further discussed

in the consideration of the conclusive nature of the orders of the commissioners' court.

In support of the conclusion reached respecting the items in the first two groups, see the following authorities: Heidenheimer v. Brent, supra; Rice v. Vasmer, 51 Tex. Civ. App. 167, 110 S. W. 1005; Polk v. Peterson, 93 S. W. 504; Bray v. Walker, 165 S. W. 107; Kimbrough v. Bevering, 182 S. W. 403; Henderson Co. v. Richardson, 15 Tex. Civ. App. 699, 40 S. W. 38; Warswick v. State (Tex. Cr. App.) 35 S. W. 386.

[5] Applying the same general rule and principle announced in the authorities first cited, it is also clear that the claim against Davis and the sureties for the moneys improperly collected for jail guards is a liability arising upon his official bond, and that he and his sureties would be liable therefor if it were not for the conclusive and final nature of the orders of the commissioners' court allowing such claims.

Article 7127, Vernon's Sayles' Revised Statutes, provides:

"Whenever in any county it may become necessary to employ guards for the safe-keeping of prisoners, and the security of jails, the sheriff may, with the approval of the commissioners' court, or in case of emergency, with the approval of the county judge, employ such number of guards as may be necessary; and his account therefor, duly itemized and sworn to, shall be allowed by said commissioners' court and paid out of the county treasury."

Article 1148 of the Code of Criminal Procedure provides that at each regular term of the commissioners' court the sheriff shall present his account to such court for the expenses incurred by him since the last account presented for the safe-keeping, support, and maintenance of prisoners, including guards employed, if any. The article further prescribes the form and details to be contained in the account.

So, in presenting to the commissioners' court his account for guard hire, the sheriff was performing an official act and an act which he could rightfully do. It was done strictly "virtute officii." The presentation of a false and fraudulent account of that nature and accepting payment thereof was official misconduct which violated the terms of his official bond which obligated him to faithfully perform all such duties as might be required of him by law. He and his sureties became liable upon his bond for such misconduct if inquiry into the correctness of the account and the propriety of the court's action in allowing same be not precluded by the effect which is to be given to the action of the court in allowing the claims for guard hire and ordering same paid.

[6] This brings us to the second question in the case, viz.: Was the action of the commissioners' court in allowing the claims for guard hire final and conclusive so as to preclude the county from going behind the orders allowing such claims and making a collateral attack thereon as is here attempted to be done?

Subdivision 8 of article 2241, R. S. 1911, confers upon commissioners' courts the power and it is made their duty "to audit, adjust and settle all accounts against the county and direct their payment." By the act of March 25, 1911, this provision was amended by the elimination of the word "adjust." General Laws, 32d Leg., p. 236 (Vernon's Sayles' Ann. Civ. St. 1914, art. 2241). This elimination does not alter the meaning of the section. The words "adjust" and "settle" are synonyms (Funk & Wagnalls' New Standard Dictionary; Webster's Dictionary), and the word "adjust" was used in the same sense as "settle." See Century Dictionary & Cyclopedia definition of "adjust." This authority of the commissioners' court is exclusive, and is subject only to the appellate jurisdiction of the district court under the provisions of section 8 of article 5 of the Constitution, which confers upon the district court appellate jurisdiction and general supervisory control over the county commissioners' court. Under this provision of the statute it is clear that the commissioners' court had jurisdiction and authority to settle all accounts against the county presented by the sheriff for guard hire and direct their payment or reject the same as the facts might warrant. In case of claims of any nature against a county, where it has jurisdiction and the authority to settle same and direct their payment, its action in so doing is conclusive, and cannot be reviewed except by the district court under its appellate jurisdiction. The district court has no authority to review and set aside the action of the commissioners' court with respect to such matters in a collateral proceeding. In the opinion of the majority, the correctness of this view is conclusively demonstrated by a consideration of the authorities. Freeman on Judgments (3d Ed.) § 524, says:

"When a court of special jurisdiction, having authority to decide the matter in controversy, acquired jurisdiction over the parties to the suit, its judgment is final and conclusive, unless reversed by some appellate court. Such judgment cannot be overhauled or controverted in any original suit, at law or in equity. Its merits can nowhere be collaterally investigated. No error, however palpable, will vitiate it. 'An inferior court having acquired jurisdiction, the same intendments will be made in its favor as in the case of superior courts.' Courts not of record are like special agents; we 'must see their authority,' before regarding their decisions as lawful; but, seeing it, we are to respect it. Their authority is not the less certain because specified and confined. 'It is well settled that, when the jurisdiction of a court of limited and special authority appears upon the face of its proceedings, its action cannot be collaterally attacked for mere error or irregularity. The jurisdiction appearing, the same presumption of law arises, that it was rightly exercised, as prevails with reference to the action of a court of superior and general authority."

See, also, 23 Cyc. 1220.

The true rule and its limitations in a case of this nature is best stated by Judge Dil-

lon in Shirk v. Pulaski Co., 4 Dill. 209, Fed. Cas. No. 12,794, as follows:

"Within the limits of their power, as conferred by statute, the action of the county court in determining the amount due a creditor of the county, in the absence of fraud, or perhaps mistake, binds the county; but the county court cannot bind the county by ordering a claim to be paid, which is not made a county charge by statute, or by allowing more than the statute distinctly limits, or by an allowance in the face of a statutory prohibition."

This is the rule adopted by the courts of our state. Callaghan v. Salliway, 5 Tex. Civ. App. 239, 23 S. W. 837; School Trustees, Dist. No. 25, Harris County, v. Farmer, 23 Tex. Civ. App. 39, 56 S. W. 555; Vogt v. Bexar Co., 16 Tex. Civ. App. 567, 42 S. W. 127; Rochelle v. Lane, 105 Tex. 350, 148 S. W. 558; Polk v. Roebuck, 184 S. W. 513; Slaughter v. Knight, 184 S. W. 539; Bell Co. v. Felts, 120 S. W. 1065; McKinney v. Robinson, 84 Tex. 489, 19 S. W. 699; Tarrant Co. v. Rogers, 125 S. W. 592. See, also, Ray v. Woodruff, 168 Ky. 563, 182 S. W. 662; New Madrid Co. v. Phillips, 125 Mo. 61, 28 S. W. 321; Freeman on Judgments (3d Ed.) § 531.

[7] Each of the above Texas cases are in harmony with and apply different phases of the rule announced by Judge Dillon. The instant case affords an apt illustration thereof. The items embraced in the group numbered 1 could not, under any circumstances, be proper charges against the county, and there was an utter want of authority on the part of the commissioners' court to allow and order such claims paid. This want of authority was jurisdictional. Its action in so doing had no conclusive or final effect, but, upon the contrary, was void.

[8] The same is true of its action in allowing and ordering paid the items of the second group. This is because the court was attempting to allow more than the statutory limit, since the sheriff's compensation for these services was distinctly limited to the annual salary paid him under article 3866, R. S. When this annual salary was allowed and paid, the court exhausted its power to compensate him for the items enumerated in the second group, and the allowance of additional compensation was without lawful authority, and its action in so doing was void.

On the other hand, the court did have jurisdiction and authority to pass upon the merits of and allow or reject the claims for guard hire. And its action upon such claims is final, and could not be reviewed except by an appeal to the district court under the constitutional provision.

But it is insisted that the commissioners' court was without jurisdiction and authority to allow the claims for guard hire, and that its action in so doing is not final for the following reasons:

(a) Because the claims were without merit and not presented in the proper form, as set forth in that portion of the pleading quoted verbatim above.

(b) Because of the allegations of false and fraudulent representations made by Davis to the commissioners' court respecting the hire of guards as set forth in paragraph E of the quoted pleading.

[9] As to the first contention, these merely present reasons why the commissioners' court should have rejected the claims. They merely show an erroneous action upon the part of the court in allowing the claims. The lack of merit of the claims and want of proper form in the account as it was presented did not impair the jurisdiction and authority of the court to pass upon the claims and allow or reject the same as it deemed proper. To hold as appellant contends would be to make the court's jurisdiction and authority dependent upon the merits of claims and the form in which they are presented to it; in other words, that it could neither allow nor reject a claim unless it was intrinsically meritorious and presented in proper form. This is the logical and only conclusion to which this contention would lead, and its mere statement carries its own refutation. In this connection it is to be noted that in subdivision H of the quoted pleading it is averred:

"That said court in approving, allowing, and ordering said claims paid out of the funds of Jeff Davis county acted in good faith, but under a mistake of fact, and without a knowledge of the law, and said claims being such the payment of which plaintiff was not in law bound, their acts in approving, allowing, and ordering them paid out of the funds of the county as well as the payment thereof are unauthorized, without the warrant of law, and unlawful."

[10] These allegations, in a few words, present the sum and substance of appellant's contention respecting the guard hire items, viz.: That the orders of the commissioners' court allowing same should be nullified because the court acted under a mistake of fact and without a knowledge of the law, and therefore the orders were unauthorized and unlawful. The majority is of opinion that such position is wholly unsound; that the judgment of a court cannot be collaterally impeached merely because it was based upon a mistake of fact and without a correct knowledge of the law.

[11] As to the allegations of false and fraudulent representations made by Davis to the commissioners' court, it is very clear that they are insufficient in this proceeding to avoid the effect of the orders of the commissioners' court allowing the claims and ordering the same paid. In Maddox v. Summerlin, 92 Tex. 483, 49 S. W. 1033, 50 S. W. 567, Judge Brown held that a judgment of the district court could not be attacked in a collateral proceeding upon the ground that it was procured by perjured testimony. See, also, Word v. Schow, 29 Tex. Civ. App. 120, 68 S. W. 192; Moor v. Moor, 63 S. W. 347; 23 Cyc. 1100; Black on Judgments, § 296; Van Fleet on Collateral Attack, § 550. This is the well-settled rule, and it applies to or-

ders and judgments of any court respecting matters over which, by virtue of the constitutional and statutory provisions, it rightfully assumes jurisdiction. There is no contention that the commissioners' court was guilty of fraud in allowing the claims. Upon the contrary, it is expressly alleged that it "acted in good faith, but under a mistake of fact and without a knowledge of the law."

[12] The only remaining question in the case is that of limitation. As to the items in groups 1 and 2, it is shown above that the liability of Davis therefor does not arise upon his official bond, but upon an implied contract for county money had and received. This being true, the two-year statute of limitation applies with respect thereto. As to the item of guard hire, if there were any liability in respect thereto, it would arise upon his official bond, and under the decision in Hillman v. Gallagher, 103 Tex. 427, 128 S. W. 899, the four-year statute would apply.

Upon the views stated it follows that the exception of the sureties was improperly sustained in so far as it related to the guard hire item, but this error is harmless in view of the fact that this item was properly eliminated upon the exception of Davis that the action of the commissioners' court in allowing and ordering same paid was conclusive and final. And the exception of Davis that the suit was barred by the two-year statute of limitation was likewise improperly sustained, in so far as it related to the guard hire item, but this error was likewise immaterial, because the item was properly eliminated upon his other exception.

It follows that no reversible error is shown in sustaining the exceptions, and the cause is affirmed.

WALTHALL, J. (dissenting). I concur in the majority opinion on all of the issues discussed and decided, except as to that part holding that the action of the commissioners' court in allowing the claim for jail guards is final and conclusive, and on that issue I wish to express my dissent.

Article 7127, Revised Civil Statutes, provides:

"Whenever in any county it may become necessary to employ guards for the safe-keeping of prisoners and the security of jails, the sheriff may, with the approval of the commissioners' court, or in case of emergency, with the approval of the county judge, employ such number of guards as may be necessary; and his account therefor, duly itemized and sworn to, shall be allowed by said commissioners' court and paid out of the county treasury."

The question of the necessity for the employment of jail guards and the question as to whether a case of emergency existed are evidently left to the decision of the officers named under the above statute as a basis for their approval of the employment of guards. Had the commissioners' court passed upon the question of the necessity for the employment of guards, or the county judge upon the question of emergency, and had expressed approval of the employment of guards, conditions would have been created under the statute for an indebtedness, and an account, duly itemized and verified, for the employment of guards, would have been such as the commissioners' court could have audited, adjusted, and settled and ordered paid under the above-quoted article, or under article 2241, subd. 8, Revised Civil Statutes 1911. But the petition alleged that there never was a necessity or emergency for the employment of guards, that neither the commissioners' court nor any judge ever passed upon the question of the necessity or emergency for jail guards, or gave approval to the employment of guards, and that no guards were ever, in fact, employed, and that the acts of the sheriff in presenting such accounts were false and frauds upon the jurisdiction of the commissioners' court.

Under the facts pleaded there was a total absence of fact giving rise to any account for the employment of guards, and a total absence of any fact giving power or jurisdiction to the commissioners' court to allow said account or audit, adjust, or settle such accounts, because of the total absence of the facts creating such account. There never were in existence the limitations and conditions giving life to an account upon which the judgment of the commissioners' court could act. Mr. Freeman, in Freeman on Judgments (3d Ed.) §§ 524 and 531, says that, a court of special jurisdiction having authority to decide the matters in controversy, and having acquired jurisdiction over the matters in controversy, and when its "special authority appears upon the face of its proceedings, its action cannot be collaterally attacked for mere error or irregularity. The jurisdiction appearing, the same presumption of law arises that it was rightly exercised as prevails with reference to the action of a court of superior and general jurisdiction." In article 531 Mr. Freeman says:

"Their jurisdiction, like that of other courts not of record, must always be affirmatively shown to impart validity to their decisions. As a general rule, whenever any person or persons have authority to hear and determine any question, their determination is, in effect, a judgment having all the incidents and properties attached to a similar judgment pronounced in any regularly created court of limited jurisdiction, acting within the bounds of its authority."

Evidently the basis of the account for jail guards and the jurisdiction of the commissioners' court to allow or to audit, adjust, and settle it depended entirely upon article 7127 of the statute. Without the authority given by that article there could be no account created for jail guards; the commissioners' court would acquire no jurisdiction, as there would be no "matters properly before them" upon which their judgment could act. Wharton County v. Ahldag, County Treasur-

er, 84 Tex. 12, 19 S. W. 291. An attack upon the action of that court, to be a collateral attack, presupposes that the court has acted upon some matter specially referred to the commissioners' court for its action; i. e., the approval of the employment of guards under circumstances of necessity or emergency. Therefore, Mr. Freeman says, their jurisdiction, like that of other courts not of record, must always be affirmatively shown to impart validity to their decisions. That is, the conditions precedent to the power of the commissioners' court to act in the matter of allowing the claim, the approval by the officers named of the employment of guards based on necessity or the emergency, must appear; otherwise the court was without power to act. The jurisdiction of the commissioners' court in the case of auditing an account for jail guards certainly would depend upon the facts upon which the account is based; was there a necessity or emergency for the employment of jail guards, and did the sheriff have the approval of the officer to whom those questions have been referred by the statute? Not simply whether an account is presented for jail guards. Suppose the order of the commissioners' court in allowing the account for jail guards, as suggested by Mr. Freeman, had stated the facts as pleaded—i. e., that there never was a necessity for employing guards for the safe-keeping of prisoners, that the court had never so decided, or given their approval of the employment of guards, that no emergency had arisen, that the county judge had not approved of the employment of guards, and that there were in fact no prisoners in the jail to be guarded—could it be said that the commissioners' court could allow or audit, adjust or settle and order paid such account for jail guards? I think not. To allow such an account would be to create the account and then allow it. A court is simply an agency of the sovereign, and subject to all limitations and conditions which are inseparable from a representative position. A court of limited powers and jurisdiction is a special agent of the sovereignty, and its powers to act are limited to the matters specially referred to it for action. It cannot lawfully go beyond the authority which has been delegated to it, but, like other agents, it stands for its principal only so far as, and in such matters as, the principal has empowered it to act. The principal, the sovereign in this case, by a general statute of which its agent, the commissioners' court, must take notice, placed a limitation upon its power to audit, adjust, and settle an account for jail guards.

All of the conditions and limitations placed upon the item by the Legislature must exist, or at least be so determined, before it can be a charge against the county funds.

Mr. Freeman, in the section quoted above, has gone still further than is claimed in this case, when he says the facts that give the commissioners' court jurisdiction must al-ways be affirmatively shown to impart validity to their decision. The Legislature in article 7127 states the facts that must appear. The pleader here does not rest the question simply upon the statement that the account and order of the court in allowing the account does not show necessity or emergency for jail guards and that these facts have been adjudicated or decided by the commissioners' court, or county judge, but the pleading denies the existence of the facts upon which the account must be placed to have any validity whatever and to give the commissioners' court the jurisdiction to consider it as an account, and alleges that neither the commissioners' court nor any judge had passed upon the questions of necessity or emergency or approved the employment of guards. The Legislature had the power to place the conditions and limitations it did upon such accounts.

If, as alleged, there was no necessity or emergency for jail guards, and the commissioners' court and county judge had not decided that there was and had not approved the employment of guards, and if in fact no jail guards were employed, there could be no account for jail guards that the commissioners' court could audit and allow, and their order allowing the account would be a nullity, and the suit to recover the amounts collected out of the county's funds on such accounts would not be collateral or final.

As said by Chief Justice Garrett in McDonald v. Farmer, 56 S. W. 555, in matters involving discretion, of which the commissioners' court has jurisdiction, their decisions are held to be conclusive. City of Ft. Worth v. Davis, 57 Tex. 225; Callaghan v. Salliway, 5 Tex. Civ. App. 239, 23 S. W. 837. To allow and pay an account for more than the law allows, as in the McDonald-Farmer Case, is similar to that of allowing and paying an account where the facts do not exist to create an account and the commissioners' court have not decided that such facts did exist and have not approved the employment of guards. As said in the McKinney v. Robinson, Case, supra, where the commissioners' court attempted to credit and allow accounts not legally chargeable against the county, it is an act in excess of jurisdiction, and is void. It evidently follows, as in the instant case, that where the commissioners' court allows an account against the county, where the law creates such account only under conditions precedent, and where such conditions do not exist, and the court have not decided that such conditions did exist, it would be the creation of an account by the court beyond the limits of their power, and not an exercise of the power given. In the Callaghan-Salliway Case, supra, relied upon by appellee, Judge Neill finds the facts to exist that created an account against the county in favor of Salliway. Salliway had been employed by the commissioners' court at a stated salary entered upon the minutes. He made out his ac-

count for the amount agreed upon, and the court allowed the account as agreed and for the amount as agreed. There were present all of the facts necessary and precedent to the creation of the account. It was not the creation of an account as in the instant case. Salliway's service rendered under the agreement previously entered into created the account. In that case it is fair to presume that the facts were passed upon by the commissioners' court. The facts of the employment in advance and service in advance of the presentation and allowance of the account were not questioned; the court simply carried out and enforced the agreement as made.

In Ledbetter v. Dallas County, 51 Tex. Civ. App. 140, 111 S. W. 193, the court states that there was a necessity for jail guards, and guards were in fact employed; that a short time after Ledbetter's qualification as sheriff, and after he had employed the guards, he went into the courtroom occupied by the commissioners' court, where he found the court in session and three members of the court present, and asked what to do about the pay of the guards, when one of the commissioners, in response, replied:

"Go ahead and pay the boys and make out your account, and the commissioners' court will allow it."

The court knew of the necessity for jail guards, knew of their employment, and knew that in previous years the sheriff had employed guards. No order at that time was entered by the commissioners authorizing the employment of the guards. The auditor refused to approve the sheriff's account for guards. The commissioners' court subsequently passed a formal order allowing the account. The court held that under the facts the sheriff had the approval of the commissioners' court within the meaning of the statute in the employment of necessary guards.

In McDade v. Waller County, 3 Willson, Civ. Cas. Ct. App. § 110, where Sheriff McDade actually employed a guard to guard prisoners confined in the jail, the employment being without the approval of the commissioners' court or county judge, the court held:

"The power of the sheriff to employ guards is expressly defined and limited. He can only make such employment with the approval of the commissioners' court, or, in case of emergency, with the approval of the county judge."

It would extend the opinion to too great length to discuss all of the cases referred to in the majority opinion. I have reviewed them, and think the facts can be distinguished from the case at bar.

For reasons stated, I believe that the approval of the sheriff's account for jail guards was not final and conclusive.

### On Motion for Rehearing.

WALTHALL, J. I have heretofore filed a statement of my views on the conclusiveness of the orders of the commissioners' court auditing and ordering paid the account for jail guards, as against a collateral attack, and dissenting from the views of the majority members, but on a careful review, on a motion for rehearing and to certify, of the authorities presented by the appellees, I have concluded to withdraw my dissent. The cases of Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325, and the authorities there referred to and the case of Martin v. Robinson, 67 Tex. 374, 3 S. W. 550, which seem applicable to this case, preclude an inquiry into facts dehors the record on a collateral attack, for the purpose of showing the invalidity of the orders or judgments, whether voidable or void. In view of the above rule so clearly stated in the authorities referred to, it would necessarily follow that allegations in a petition of facts outside the record entry of the commissioners' court in allowing the several accounts of the sheriff for jail guards, would not aid a petition in the statement of the cause of action. The petition alleges facts which, in my opinion, show void judgments or orders, but the facts alleged are outside the record, and would necessarily have to be shown by parol. With this view of the question, I am of the opinion that the orders allowing the several claims for jail guards are conclusive on a collateral attack.

### On Motion to Certify.

HIGGINS, J. Appellant has filed a motion to certify to the Supreme Court based upon two grounds: First, on account of the dissent of Associate Justice WALTHALL; second, because of alleged conflict of the opinion rendered herein with the case of Slaughter v. Knight, 184 S. W. 539.

[13] Justice WALTHALL has withdrawn his dissent as per opinion this day filed. Appellant is therefore not entitled to certificate on account of the dissenting opinion. Johnson v. Portwood, 89 Tex. 235, 34 S. W. 596, 787.

As to the second ground of the motion, we think there is no conflict between our opinion and that of Slaughter v. Knight. We regard our opinion as being in harmony with the rule announced in that case.

The motion to certify is therefore overruled.