## HOWARD et ux. v. HENDERSON COUNTY et al.

### No. 12298.

Court of Civil Appeals of Texas. Dallas. April 9, 1938.

Rehearing Denied May 7, 1938.

Bishop & Parsons, of Athens, for appellants.

W. D. Justice, Miles Smith, and R. H. Sigler, all of Athens, for appellees.

BOND, Chief Justice.

W. W. Howard was keeper of the Henderson county poor farm from 1904 until November, 1934, under varying contracts of hire with the commissioners' court of said county. In September, 1934, the commissioners' court, deeming it advisable to dispense with Mr. Howard's services on account of his advanced age, he being past 75 years, made and entered on the minutes of the court the following order: "That W. W. Howard and wife be paid $10.00 per month each, in form of warrants drawn on General Fund, during the remainder of their lifetime, to reimburse them for services already rendered. In case of death of either the survivor shall continue to draw $10.00 per month." At a subsequent term, in November, 1934, the commissioners' court, for reasons not disclosed, rescinded its order and refused further payment to Mr. and Mrs. Howard, resulting in the institution of this suit, primarily, for writ of mandamus to compel the commissioners' court to continue such payments; and, alternatively, for judgment in the sum of $3,500.05, alleged discounts on 32 county warrants ($7,488.05) issued to Mr. Howard from March 31, 1931, to November, 1934, for services rendered as keeper of the county poor farm. The suit is based on allegations that the order in question was the result of a settlement for discounts on warrants, evidencing no other consideration therefor.

At the conclusion of appellants' testimony, on appellees' motion, the trial court peremptorily instructed a verdict and entered judgment, denying appellants the relief sought.

Appellants contend that the above order of the commissioners' court, allowing each of them $10 per month during the re-

mainder of their life, is a final judgment of the court, based upon a valid claim for services rendered, which was audited and settled against the county; and, having all the incidents and properties attached to a similar judgment pronounced by a regularly created court of limited jurisdiction, acting within the bounds of its authority, stands as a liability against the county, not subject to collateral attack.

■ Under the facts of this case, we think there is a total absence of fact giving rise to any legal accounting due appellants, or to confer power or jurisdiction on the commmissioners' court to allow appellants $10 each per month during their lifetime. It is a settled rule of law in this state that, where a commissioners' court exceeds its power, attempts to allow and settle accounts not legally chargeable against the county, its acts are void and may be revoked at any time, or may be attacked collaterally in a court of general jurisdiction. Jeff Davis County ᵛ. Davis, Tex.Civ.App., 192 S.W. 291; Cameron County v. Fox, Tex.Com.App., 2 S.W.2d 433; Austin Bros. v. Patton, Tex.Civ.App., 245 S.W. 991.

Mr. Howard's testimony, supported by testimony of his son, is to the effect that he made a written contract with the commissioners' court of Henderson county for keeping of the county poor farm, in which the court agreed to pay him the sum of $10 per month for each inmate kept on the farm, "payable in cash and not in county warrants." The date of the alleged contract is indefinite; he testified, in one instance, that it was in March, 1931, and, in another, that it was in 1933; that in 1931 the commissioners' court agreed to pay him $13 per month for the care and maintenance of each inmate of the county farm; and that, in 1933, the salary was reduced to $10 per month. He further testified that at the end of each month, he presented to the commissioners' court a sworn itemized account, showing the number of inmates, the amount due at the agreed rate, and the deductible discount necessary for him to realize cash on the county warrants; that the commissioners' court audited, approved, and directed warrants to be issued by the county clerk for the amount of his claim, in each instance rejecting the item of discount; that he accepted the warrants, discounted them to Athens (Texas) merchants for groceries and supplies at the then market discount of 40 per cent.; and that in September, 1934, on learning that his services as keeper of the farm would terminate in November following, he again took up with the commissioners' court the items of discount, amounting to the sum of $3,500.05, resulting in the county settling the claim by entering the order in question, allowing him and his wife $10 each per month for their lifetime.

There is no contention or evidence that the commissioners' court contracted to pay discounts on warrants issued to Mr. Howard for services rendered, or that Mrs. Howard was ever employed to do any service for the county; and the trial of the case having been halted by the court's action on appellees' motion for an instructed verdict, there is no controverting testimony to give rise to issues, pleaded in the negative by appellees, as to whether the alleged contract was made by the court, and whether the order in question was the result of a settlement of appellants' claim for discounts. The minutes of the commissioners' court and other archives of the county fail to show that any such order was entered in the minutes of the court, or that such contract or bid was on file in the county clerk's office. However, in view of our disposition of the case—giving absolute verity to appellants' testimony, if such issues had in fact been controverted and, on a full hearing of the case, determined in appellants' favor—we fail to see how such findings would support a judgment against the county.

■ Commissioners' courts, having limited jurisdiction, may act only within the sphere of the powers and duties—express or implied—conferred upon them by the Constitution and statutes of this state. Subdivision 10 of article 2351, R.S.1925, confers the power and duty on the commissioners' court to audit and settle all accounts against the county, and direct their payment. The county treasurer, by statute, is the custodian of county funds; and the statute, article 1625, R.S., directs that: "Each county treasurer shall keep a well-bound book in which he shall register all claims against his county in the order of presentation, and if more than one is presented at the same time he shall register them in the order of their date. He shall pay no such claim or any part thereof, nor shall the same, or any part thereof, be received by any officer in pay-

ment of any indebtedness to the county, until it has been duly registered in accordance with the provisions of this title. All claims in each class shall be paid in the order in which they are registered"; and, article 1713; that: "The county treasurer shall not pay any money out of the county treasury except in pursuance of a certificate or warrant from some officer authorized by law to issue the same * *."

The language of the statutes is plain, the authority is exclusive and presents no ground for construction. The county treasurer is not authorized to pay claims against the county, except on warrants drawn by some officer authorized by law to issue same; and the commissioners' court is without power to bind the county by contract or otherwise to pay claims in cash, without providing some means for such payments, thereby giving preference in payment over other registered indebtedness of the county.

■ The record shows that, at the time of the alleged contract, Henderson county had a registered indebtedness to its general fund in excess of $30,000, and that deferred dates of payment of registered warrants against that fund extended over a period of four or five years, after their registration. The commissioners' court, at the time of the alleged contract, made no provision for the cash payment of Mr. Howard's salary, or the refund of discounts on his warrants. Thus, in the absence of an express statute, the commissioners' court was without authority to direct payment of such claims against the county, except in the manner prescribed by law. Jeff Davis County v. Davis, supra; Nueces County v. Gussett, Tex.Civ.App., 213 S.W. 725.

■ Indeed, in passing upon claims legally chargeable to the county, the commissioners' court performs a judicial act, and its order, allowing claims, has the force and effect of a judgment and may not be revoked at a subsequent term. Edmonson v. Cumings, Tex.Civ.App., 203 S.W. 428. So, in the instant case, at the end of each month, Mr. Howard, having presented to the commissioners' court a claim against Henderson county for services rendered as keeper of the poor farm, itemized and sworn to, the number of inmates listed and the amount due; and the court having regularly audited and, after deducting items of discount, allowed such claim and directed payment by war-

rant; and the warrants having been issued, accepted, and registered with the county treasurer by Mr. Howard, and, in due course, redeemed by the county treasurer, at par value—under such circumstances, Mr. Howard's several claims became valid charges against Henderson county, and the action of the court, thereon renders the various adjudications and settlements final and binding on appellants; thus, the subsequent action of the court, in giving further consideration to the claims and in allowing Mr. and Mrs. Howard a stipend for life, is void and tantamount to a gratuitous pension, not allowable or sanctioned by law.

■ The Constitution and statutory provisions each provide for limitation on the power and authority of counties, and municipal authorities of the state, to make grants of public moneys and binding contracts. Section 51, article 3 of our State Constitution, in part declares: "The Legislature shall have no power to make any grant or authorize the making of any grant of public money to any individual, association of individuals, municipal or other corporations whatsoever"; and, Id., § 52, "The Legislature shall have no power to authorize any county, city, town, or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever." And further, Id., § 53, declares: "The Legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered, or a contract has been entered into, and performed in whole or in part; nor pay, nor authorize the payment of, any claim created against any county or municipality of the State, under any agreement or contract, made without authority of law."

Giving effect to limitation on the Legislature to confer power on counties and municipal authorities, to grant public moneys to individuals, and to make contracts, the courts of this state have uniformly recognized that a commissioners' court cannot bind the county by ordering a claim to be paid, which is not made a charge against the county, or make a contract not within the limits of their power. The want of authority is jurisdictional; its action in so doing has no

conclusive or binding effect, but, on the contrary, is void.

The case of Cameron County v. Fox, Tex.Com.App., 2 S.W.2d 433, involved a claim against the county for the amount of premiums paid by the county tax collector on his official bonds, the same having been audited, approved, and ordered paid by the commissioners' court of the county, and voucher having been issued in favor of the tax collector, indorsed by him and paid by the county, the commissioners' court subsequently revoked its order and brought suit to recover the amount paid in satisfaction of the claim. The contention was there made, as here, that the commissioners' court, in the exercise of its general jurisdiction to audit and settle accounts against the county, had the right to determine whether or not such claim was one properly chargeable against the county; and that, having determined that it was, (in the absence of a review by the district court) the judgment became final and conclusive, and was not subject to collateral attack. In that case, the Commission of Appeals, in an opinion adopted by the Supreme Court, said (page 436): "The record affirmatively showing that the commissioners' court was without jurisdiction, its action in approving defendant in error's claim was wholly void; hence subject to collateral attack. Notwithstanding the payment to defendant in error was voluntarily made, the same being without lawful authority, the amount so paid may be recovered in an action by the county [citing numerous authorities]."

So, we think, the action of the trial court—having as its basis an alleged contract which the commissioners' court was without power to make, and an alleged subsequent settlement of a claim for discounts on warrants not chargeable to the county, and the order in question conferring on appellants a pension for life, which, under the Constitution, the commissioners' court could not do—is the only course the court could legally have taken, directing a verdict for appellees and entering judgment accordingly. The judgment of the lower court is affirmed.

Affirmed.

LOONEY, Justice (dissenting).

I find myself out of harmony with the decision of the majority, therefore will state the case as I believe the record justifies, and the reasons for my dissent:

W. W. Howard and wife, appellants, are seeking by mandamus to require the county judge and the county commissioners of Henderson county to authorize the issuance of county warrants in accordance with an order of the commissioners' court adopted September 25, 1934, allowing appellants $10 per month each as long as they live, in settlement of a claim against the county for $3,500.05, balance due for services rendered the county in keeping its poor farm, furnishing board, lodging, etc., and caring for the wards of the county. The order or judgment in question reads: "That W. W. Howard and wife be paid·$10.00 per month each, in form of warrants drawn on General Fund, during the remainder of their lifetime, to reimburse them for service already rendered. In case of death of either the survivor shall continue to.draw $10.00 per month." A joint warrant was issued appellants for two months under this order, but the personnel of the commissioners' court having changed, the order .was rescinded, at all events, further payments were refused, resulting in the institution of this suit to set aside the order of rescission, and for a writ of mandamus compelling compliance with the original order. At the conclusion of the evidence, the court instructed a verdict for defendants, judgment following accordingly, from which this appeal was taken.

Appellants' contention is: That the order or judgment of the commissioners' court was entered in settlement of a claim for $3,500.05 against Henderson county, balance due Mr. Howard for services rendered in keeping the poor·farm and in caring for the county wards, under contracts entered into in 1931 and 1933, respectively, the amount .of the claim presented to the commissioners' court being the difference between the face value of the warrants issued and the amount of cash realized on sale thereof; in other words, the discount suffered, which, according to the contention of appellants, the county was contractually obligated to make good.

The contentions of appellees are: That the order of September 25, 1934, being void, it was the duty of the commissioners' court to rescind and disregard same, in that, it evidenced an attempt on the part of the commissioners' court to grant appellants pensions in violation of section 52, article 3 of our Constitution; or, that the order was void under section 53, article 3 of the Constitution, in that, the same was an attempt to grant extra compensation,

after the services performed had been fully compensated according to the terms of existing contracts.

Under the authorities, I think the order in question had the effect of a final judgment, hence was not subject to collateral attack or to be revoked at a subsequent term, as was attempted (Edmonson v. Cumings, Tex.Civ.App., 203 S.W. 428; Ashburn Bros. v. Edwards County, Tex.Com.App., 58 S.W.2d 71), and could be vacated only in a direct proceedings brought in the district court for that purpose, as authorized by section 8, article 5 of the Constitution and article 1908, R.S.; however, this remedy was not pursued by appellees. See Haverbekken v. Hale, 109 Tex. 106, 204 S.W. 1162; Oden v. Barbee, 103 Tex. 449, 129 S.W. 602; Kirby v. Transcontinental Oil Co., Tex.Civ.App., 33 S.W.2d 472.

The recital that the warrants were "to reimburse them for services already rendered," imports a consideration, and forbids the indulgence of a contradictory presumption, to the effect that the order was merely an attempt to pension appellants or confer upon them gratuities. Presumptions may be indulged to supply, but never to contradict, the recitals of a judgment. So, I think the question narrows to this: May an inquiry be now made (which in effect is a collateral attack upon the order of September 25, 1934) as to whether the reimbursement to appellants, mentioned in the order, "for service already rendered," was in fact extra compensation, over and above that to which they were entitled under the contracts, or, rather, should we not indulge the presumption that the action of the commissioners' court in the premises was legal and valid? In allowing the claim and directing its payment, the commissioners' court acted in a judicial capacity, and its order is entitled to the force and effect of a final judgment, which could have been reviewed and vacated only in the prescribed manner, that is, by direct action in the district court. Also see Coryell County v. Fegette, Tex.Civ.App., 68 S.W.2d 1066. Although the record is silent in regard to whether the reimbursement order was based upon a previously existing contract, nevertheless, as against a collateral attack, we think all presumptions should be indulged in favor of the validity of the action of the court. In Martin v. Robinson, 67 Tex. 368, 374, 3 S.W. 550, the Supreme Court used language in point, as follows (page 552): "When a court of record, having such jurisdiction, has assumed to exercise it in a given case, all presumptions are in favor of the validity of its proceedings; and if the record of such a court shows that the steps necessary to clothe it with power to act in the given case were taken, or if the record be silent upon this subject, then its judgment, order, or decree must be held conclusive in any other court of the same sovereignty when collaterally called in question. Burdett v. Sillsbee, 15 Tex. [604] 618; Alexander v. Maverick, 18 Tex. [179] 197 [67 Am.Dec. 693]; Withers v. Patterson, 27 Tex. [491] 492 [86 Am.Dec. 643]; Lawler v. White, 27 Tex. [250] 254; Murchison v. White, 54 Tex. 78; Guilford v. Love, 49 Tex. 715."

However, if I am in error—that is to say, if the record is open to an inquiry as to whether or not the county was contractually obligated to make good whatever discount Mr. Howard suffered in procuring the cash on warrants issued to him—yet I think that, as the evidence in support of this contention was sufficient to raise the issue, the court erred in directing a verdict for defendants.

Obviously, this suit was not based upon the original contract alleged to have been made with the commissioners' court, but upon the adjustment made of the claim growing out of the original contract, the original being referred to simply as the basis justifying the commissioners' court in entering the order upon which the present suit was based. If the county entered into the arrangement to reimburse Howard for the loss sustained by having to discount the face of warrants issued to him, as contended, I think such an agreement clearly within the authority of the commissioners' court, under subdivision 11 of article 2351, R.S., authorizing the court to provide for the support of paupers etc.; and that the settlement, directing how payments should be made, as evidenced by the order of September 25, 1934, was authorized by subdivision 10 of article 2351, supra, granting commissoners' courts power to "Audit and settle all accounts against the county and direct their payment."

Unquestionably, the commissioners' court could have agreed to pay Howard in warrants at face value an amount per month sufficient to absorb the discount at the then prevailing rate, so as to yield $10 per month cash; this being true, why was the commissioners' court not authorized to accomplish substantially the same result by agreeing to pay $10 per month on a cash

basis, necessarily comprehending that Howard would be reimbursed the discount he had to yield in order to obtain $10 per month cash. I also think the court was authorized to direct payment of the claim, either in a lump sum or in installments. On account of the condition of the county's fiscal affairs, it was doubtless deemed best to direct payments in installments during the number of years these old people would likely live, the payments each year being only about 7 per cent. of the amount of Howard's claim. These are matters peculiarly within the exclusive domain of the commissioners' court, into which trial and appellate courts cannot with propriety enter.

It is true that the contracts were not made with Mrs. Howard individually, but with Mr. Howard; and Mrs. Howard individually asserted no claim, but it seems that, in the adjustment, the amount allowed ($20 per month) was directed to be paid $10 to each Mr. and Mrs. Howard, evidently by agreement of the parties. This was an after consideration, purely a matter of agreement, and in no sense touched the legality or validity of the original arrangement. It being a community transaction that Mr. Howard had the legal right to control, if he saw fit to have one-half the amount paid to Mrs. Howard, no one else was affected or could complain.

It may be true, as stated in the majority opinion, that there was no contention or evidence that the commissioners' court contracted to pay Howard the amount of "discounts" eo nominee, on warrants, but looking to the substance of the matter, while "discounts" as such were not mentioned, the agreement entered into for the year 1933–34, as testified to by both Howard and his son (and not contradicted), was upon a cash basis, that is to say, on a basis of $10 per month in cash, instead of $10 per month in scrip or warrants; this, it is perfectly evident, could not have been accomplished, and the contract in good faith performed, unless the county reimbursed Howard the amount he lost by having to discount the warrants.

Due to the failure of its depositary in March, 1931, the county lost money, its warrants depreciated in value, requiring heavy discounts in order to obtain cash. At the trial the county treasurer testified that the fiscal affairs of the county were in such condition that warrants issued would not likely be paid under four or five years. The merchant from whom Howard pur-chased groceries, and to whom he delivered the warrants for sale (proceeds to be credited on the grocery account), testified that the warrants could not be sold for more than from 50 to 60 per cent. of their face value.

While the testimony of Mr. Howard, in places, is somewhat confusing and apparently contradictory, yet it should be considered as a whole in order to arrive at its meaning. He testified that, in the fall of 1934, the commissioners' court was anxious for him to yield possession and move from the premises. He had several months yet to serve, and was unwilling to yield possession. This precipitated a controversy, and the presentation of his claim for discounts he had to yield, resulting in a final settlement, as evidenced by the order of the commissioners' court heretofore set out. He gave testimony which, standing alone, would bear the construction that the commissioners' court made the settlement in consideration of his moving off and yielding possession of the premises. But, even if that was the agreement, it was not without consideration, for certainly Howard did not have to yield possession, and the commissioners' court could not arbitrarily have moved him; hence an agreement to pay him a consideration for moving would have been perfectly legal. Evidently, Howard's yielding possession entered into the adjustment, but the matter of discount seems to have been the larger consideration. I do not think the question should have been determined from a mere fragment of the testimony, but that all testimony bearing upon the issue should have been considered. If this had been done and the issue submitted, I think the jury could reasonably have concluded from the evidence that, although the word "discount" was not mentioned when the contracts were let, yet, from the testimony of both Howard and his son, the conclusion could have been reached that the contract for 1933–1934 was let on a cash basis, as distinguished from warrants at face value, which impliedly contemplated, without mentioning the word "discount," that Howard would be reimbursed the amount necessary to yield $10 in cash.

A matter worthy of consideration is that, neither the county judge, nor any person connected with the commissioners' court at the time the contracts were let to Howard, testified in the case. If Howard's version of the arrangement was deemed incorrect by any member of the court, it seems that such member should have been called as a

486

witness. So, in view of this status, I am of opinion that the trial court erred in assuming, as a matter of law (which necessarily must have been assumed in directing the verdict), that there was no evidence tending to show that the county contracted to pay Howard cash, as distinguished from script or warrants at face value.

For reasons stated, I think the order of September 25, 1934, is a final judgment and not subject to collateral attack; and not having been appealed from and vacated in a direct proceeding, should be enforced; therefore, am of opinion that appellants are entitled to the relief sought. But, if in this I am in error, and it should be held that it is permissible at this time to inquire whether there existed a contractual obligation on part of the county to make good the discounts Howard had to yield in order to obtain cash on the warrants issued to him, as the evidence raised the issue, I think the court committed reversible error in directing a verdict for defendants, hence that the judgment should be reversed and the cause remanded for further proceedings.