

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

May 16, 1997

The Honorable Kenneth Armbrister
Chair, Committee on State Affairs
Texas State Senate
P.O. Box 12068
Austin, Texas 78711-2068

The Honorable Ron Lewis
Chair, Committee on County Affairs
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

The Honorable Ramiro V. Martinez
Webb County Auditor
P.O. Box 3103
Laredo, Texas 78044

Opinion No. DM-440

Re: Whether the county treasurer or the county auditor is responsible for various duties under chapters 112 and 113 of the Local Government Code, and related questions (RQ-634)

Dear Gentlemen:

We have received requests for advice about certain duties of county treasurers and county auditors under chapters 112 and 113 of the Local Government Code, from Senator Armbrister's predecessor as chair of the Senate Committee on State Affairs, from Representative Lewis' predecessor as chair of the House Committee on County Affairs, and from Mr. Martinez, the county auditor for Webb County. Because these queries raise similar issues and require us to cover similar ground, we address them together. The chair of the Senate Committee on State Affairs asks whether the county treasurer or the county auditor "receives and pre-audits claims, and prepares and processes cash disbursements in counties with a population less than 190,000." The chair of the House Committee on County Affairs asks how counties may establish a "first in time, first in line" claim register system for vendors, whereby claimants may secure their priority in order of payment by presentation of a claim to the proper officer prior to approval by the commissioners court. Finally, Mr. Martinez asks whether the county auditor or the county treasurer should prepare and process payments for accounts payable.[1]

---

[1] The office of county treasurer has been abolished in some counties. *See* Tex. Const. art. XVI, § 44. Not all counties are required to have a county auditor. *See* Local Gov't Code § 84.002. This opinion is pertinent only to those counties that have both a county treasurer and a county auditor.

We begin by addressing questions from the chair of the House Committee on County Affairs about a "first in time, first in line" claim register system for vendors. He refers to section 113.061 of the Local Government Code, which requires the county treasurer to register claims in the order presented, and then asks the following questions with respect to the county auditor, the county clerk, the county treasurer, or "the successor to the duties of the county treasurer":

1.  The records of which . . . county officers create and establish an "official order of payment" register of claims or accounts presented against a county . . . ?

2.  So that a claimant claiming against a county may establish, insure and protect an appropriate "in line" position for payment of his/her claim within a "first in time, first in line" order of payment and where such claim is subsequently approved for settlement, with which . . . county officers or county government bodies should the claimant present his/her claim or account for claim registration . . . ?

We assume that he inquires only about claims which are subject to section 113.061 in subchapter D of chapter 113 of the Local Government Code. Section 113.061 provides in part:

> The county treasurer shall maintain a record in which the treasurer shall register each claim against the county. The treasurer shall register the claims in the order in which they are presented. If more than one claim is presented at the same time, the treasurer shall register them in the order of their date.[2]

Claims are to be registered in one of three categories: scrip issued to pay or feed jurors; scrip issued under a road law or for work done on roads and bridges; or general county indebtedness.[3] Section 113.061 provides that a claim must be registered pursuant to this provision before it is paid.[4] In addition, section 113.061 expressly states that the county treasurer is required to "pay each claim in each class in the order in which it is registered."[5] Finally, section 113.061 requires that the treasurer's register entry for each claim must state the class of the claim, the name of the payee, the amount of

---

[2]Local Gov't Code § 113.061(a).

[3]See Tex. Const. art. VIII, § 9 (county may put all tax money collected into one general fund, and need not allocate taxes among general fund, permanent improvement fund, road and bridge fund, and jury fund).

[4]Local Gov't Code § 113.061(b).

[5]Id. § 113.061(d).

the claim, the date of the claim, the date of the registration, the claim registration number, the authority under which the claim was issued, and the service for which the claim was issued.[6]

Subchapter D of chapter 113 of the Local Government Code requires that the county auditor and the commissioners court approve claims before they are paid,[7] but it does not give the county auditor or the commissioners court any role in the registration of claims or in the actual ministerial act of paying claims. We have received numerous briefs on the timing of claims registration, that is, whether claims are registered by the county treasurer before or after they have been approved by the county auditor and the county commissioners court.

In Attorney General Opinion H-171, this office considered whether a claim should be presented to the county treasurer before it has been approved by the county commissioners court. That opinion concluded that

> the proper procedure to be followed with all claims against the county . . . is for any claim, bill or account for any expense or indebtedness of the county to be submitted to the Commissioners Court for its approval. If it is approved, a warrant should be drawn by the county clerk and submitted to the County Treasurer for his endorsement . . . . It is at that time that claims should be placed upon the register maintained by the County Treasurer in the order of their date.[8]

As this quote demonstrates, the "claim" presented to the treasurer for registration is represented by a county warrant issued by the commissioners court or other officer authorized to issue the warrant.[9] Some provisions of chapter 113 use the term "claim" to refer to a warrant issued by the commissioners court. For example, sections 113.062 and 113.063 state procedures to be followed when an individual tenders "a claim against the county" in payment of a fine, judgment, taxes, or other indebtedness owed the county.[10] The officer who receives the claim in payment of a debt owing the county shall file a report listing "the party in whose favor the claim was *issued*,"

---

[6]*Id.* § 113.061(e).

[7]*See id.* § 113.064(a) (in county that has county auditor, county auditor must approve "each claim, bill, and account" before meeting of commissioners court).

[8]Attorney General Opinion H-171 at 5 (1973) (citations omitted).

[9]*See* Local Gov't Code § 113.041(c), (d).

[10]*Id.* § 113.063(a); *see* Attorney General Opinion M-657 (1970) (reading "claim" in predecessor of section 113.062 as "warrant").

language that applies to a warrant.[11]   The court in *Howard v. Henderson County*, 116 S.W.2d 479, 482 (Tex. Civ. App.--Dallas, 1938, writ ref'd), describes the process of paying an individual as follows:

> [A]t the end of each month, Mr. Howard, having presented to the commissioners' court a claim against Henderson County for services rendered [by Mr. Howard] as keeper of the poor farm, . . . and the court having regularly audited and, after deducting items of discount, allowed such claim and directed payment by warrant; and the warrants having been issued, accepted, and registered with the county treasurer by Mr. Howard . . . .[12]

Thus, the warrant was registered with the treasurer after the commissioners court approved the claim and directed payment by warrant. We affirm the conclusion in Attorney General Opinion H-171. We further note that if claims were registered prior to their submission to the county auditor and county commissioners court for approval, the payment of approved claims could be delayed indefinitely pending the approval of disputed claims.

A brief asserts that Attorney General Opinion H-171 is incorrect in part because it would require the county treasurer to register a claim under section 113.061 and to perform his or her duties under section 113.042 simultaneously. Section 113.042 provides that "[o]n the presentation of a warrant, check, voucher, or order drawn by a proper authority, and if there are sufficient funds for payment on deposit in the account against which the instrument is drawn, the county treasurer shall endorse on the face of the instrument the order to pay the named payee and shall charge the amount in the treasurer's records to the fund on which it is drawn." The brief argues that the legislature never envisioned that the county treasurer should receive simultaneously claims for registration and warrants drawn for their payment from either the commissioners court or the county auditor.

A legislative purpose is served by registering claims with the treasurer after approval by the commissioners court and before endorsement. If there are sufficient funds on deposit to pay the warrant, endorsement will occur soon after registration of the claim, but if funds are not sufficient, the registration number on the warrant will establish priority for payment in the future when the county acquires funds. For example, in *Howard v. Henderson County*, cited above, the court noted that registered warrants were not paid until four or five years after registration because the county's general fund was in debt.[13]   Provided that the county treasurer pays claims in the order registered, it is possible to conform to the mandate of both provisions. The construction of section 113.061 in Attorney General Opinion H-171 is not inconsistent with section 113.042.

---

[11]Local Gov't Code § 113.063(a)(1) (emphasis added).

[12]*See also Clarke & Courts v. Crawford*, 161 S.W.2d 148 (Tex. Civ. App.--Texarkana 1942, no writ) (referring to "[t]he registration of valid county warrants," thus describing as "warrant" document registered by treasurer).

[13]*Howard*, 116 S.W.2d at 482.

For the foregoing reasons, we conclude that under section 113.061 of the Local Government Code, claims are registered by the county treasurer after they have been approved by the county auditor and the county commissioners court. Thus, section 113.061 does not create a "first in time, first in line" order of payment, whereby claimants may secure priority in payment before the commissioners court approves the claim, nor are we aware of any other statute that does so. We note, however, that the order in which a county commissioners court approves claims will have a substantial effect upon the order in which the issued warrants are registered by the treasurer.

We turn to the questions submitted by the Chair of the Senate Committee on State Affairs and by the County Auditor for Webb County. Both requestors wish to know which county official prepares and processes disbursements of county funds.

In *Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77 (Tex. 1997), the Texas Supreme Court answered a closely related question. The issue in *Agan* was whether the commissioners court could divest the county treasurer of payroll preparation responsibilities and transfer these responsibilities to the county auditor.

The court began its legal analysis with article XVI, section 44(a) of the Texas Constitution, which provides in part:

> Except as otherwise provided by this section, the Legislature shall prescribe the duties and provide for the election by the qualified voters of each county in this State, of a County Treasurer and a County Surveyor . . . .

Thus, the constitution establishes the office of county treasurer, but gives the legislature the responsibility to prescribe the treasurer's duties. The court reviewed provisions found in chapter 113 of the Local Government Code that gave the treasurer exclusive authority over receiving and disbursing funds from the county treasury.[14] It also found that certain other statues applied to the county treasurer without granting that office the exclusive power to perform specific functions.[15] Neither the constitution nor the legislature had assigned payroll preparation to any county official.[16]

---

[14]The treasurer, as chief custodian of county funds, is required to receive all money belonging to the county and to deposit it in a designated depository, Local Gov't Code § 113.001, to keep an account of the receipts and expenditures of all money received by virtue of the office and all debts due and owned by the county, *id.* § 113.002, to receive and disburse all money belonging to the county, *id.* § 113.003, paying and applying it as required by law and as the commissioners court may require or direct, *id.* § 113.041(a).

[15]For example, section 155.021 of the Local Government Code provides that the "County Treasurer or, if another officer is specified by law, that other officer shall make deductions from, or take other similar actions with regard to, the compensation of county employees." This statute "allows the County Treasurer or another county official to conduct the described function." *See Comm'rs Court of Titus County v. Agan*, 940 S.W.2d 77 (Tex. 1997).

[16]*Agan*, 940 S.W.2d at 81.

"Though the Legislature has enumerated several functions that cannot be taken away from the County Treasurer, preparing the payroll is not one of them."[17]  The court further stated that

> [t]he budgetary decision to transfer the payroll preparation responsibilities to the County Auditor's office is a legislative function for which the Commissioners Court receives broad discretion. . . . Because the Legislature has not assigned payroll preparation responsibilities, the Commissioners Court acting in its legislative capacity may delegate the responsibilities to an appropriate county official.[18]

The county auditor was an appropriate official to whom payroll preparation responsibilities could be delegated, because the auditor has statutory authority to perform the clerical functions associated with payroll preparation.[19]  However, the commissioners court could not delegate to the auditor the payroll preparation responsibilities that involved disbursing county funds, because the legislature had delegated these to the county treasurer.  In the *Agan* case, the disbursement duties that had to be performed by the treasurer included the following:  making federal income tax[20] deposits with the bank; making child support deposits with the appropriate offices; depositing payroll funds; paying insurance premiums; and wiring insurance payments to third party administrators.[21]  The remaining duties could properly be assigned to the county auditor because they did not involve disbursement, payment, or application of county funds.[22]  The duties that could be assigned to the auditor's office included the following:  collecting timesheets from county departments; entering timesheet data into the county computer to generate payroll deductions for federal income tax, FICA, Medicare, insurance, retirement, and child support payment; preparing insurance claims; answering questions about insurance claims or payments; preparing and transmitting W-2's and 1099's; and preparing payroll checks.[23]  After preparing the payroll checks, the clerk in the auditor's office delivered the payroll checks with the timesheets to the county treasurer for verification, signature, and disbursement.  The court concluded as follows:

> The Legislature has assigned the County Treasurer certain core functions. The Commissioners Court cannot allocate the County Treasurer's core

---

[17] *Id.*

[18] *Id.*

[19] *Id.* (citing Local Gov't Code §§ 152.051 (county payroll officer means county auditor within this subchapter), 155.002(a)(2) (requiring payroll deductions to be submitted to county auditor)).

[20] Federal income tax is abbreviated "FIT" in *Agan* opinion.

[21] *Agan*, 940 S.W.2d at 82.

[22] *Id.*

[23] *Id.*

> functions to any other officer, including the County Auditor. If the Legislature does not specifically assign a duty to the County Treasurer, that duty is not one of the County Treasurer's core functions. The Commissioners Court may, within its discretion, assign those non-core functions to other county officials the Legislature authorizes to perform those functions.[24]

In concluding that the commissioners court could assign payroll preparation functions to the county auditor, the Texas Supreme Court expressly disagreed with the conclusions of Attorney General Opinions JM-911 and JM-986 (1988). Accordingly, these opinions are overruled.

The Supreme Court's decision in *Agan* establishes a rule for answering the questions before us. Mr. Martinez asks who should prepare and process payments for accounts payable.[25] The Chair of the State Affairs Committee asks whether the county auditor or the county treasurer "receives and pre-audits claims, and prepares and processes cash disbursements in counties with a population less than 190,000."

Your questions encompass all of the disbursements of county funds that may be made for any legal purpose. Since your question is general, our answer must be general also, and will not reach statutorily-created exceptions applicable to specific transactions. We believe, however, that the general guidance provided by the *Agan* case will enable counties to resolve questions about disbursement procedures for themselves.

The rule established by the *Agan* case for payroll preparation also applies to the preparation and processing of claims for other county expenditures. If the legislature has not assigned a function to a specific officer, the commissioners court acting in its legislative capacity may delegate that responsibility to an appropriate county official. The legislature has delegated to the county treasurer the authority to disburse county funds and to "pay and apply the money as required by law and as the commissioners court may require or direct."[26] The requestors inquire about procedures that are preliminary to the disbursement of funds--the receipt and pre-audit of claims, preparing and processing payments for accounts payable.[27] We believe that the legislature has delegated the pre-audit of claims to the county auditor, but we find no statute delegating the other functions to a county officer. Except for the pre-audit of claims, the commissioners court may delegate the ministerial

---

[24]*Id.*

[25]In his letter, Mr. Martinez informs us that he is "fully cognizant of the processes stipulated in the Local Government Code regarding approval by the county auditor and by the commissioners court," and that he also "clearly understand[s] that the county treasurer is the disbursing officer for the county."

[26]Local Gov't Code § 113.041(a).

[27]Although the processing of cash disbursements could be read to include disbursement of money from county funds, we will assume it does not include disbursement.

duties involved in the other procedures to a county official that has statutory authority to perform such clerical functions.

The Standard Financial Management System for Texas Counties ("SFMSTC"), an accounting manual for counties prepared by the Comptroller of Public Accounts, defines "pre-audit" as follows "A pre-audit consists of a routine examination of each invoice to verify its validity and accuracy."[28]

In a county that has a county auditor, "each claim, bill, and account against the county must be filed in sufficient time for the auditor to examine and approve it before the meeting of the commissioners court."[29] The auditor may require that a claim, bill or account be verified by an affidavit indicating its correctness and may administer oaths in connection with approving claims.[30] The commissioners court may not assign to another officer the pre-audit duties that these provisions give the county auditor.

We have found no statutes that delegate to a specific officer the receipt of claims, and the preparation and processing of payments for accounts payable. The commissioners court has broad discretion in the exercise of its legislative function to delegate responsibilities to an appropriate county official.[31] Both the county treasurer and the county auditor have statutory authority to carry out the clerical functions leading up to the disbursement of county funds. The county treasurer, in addition to being responsible for the disbursement of county funds, may issue a duplicate instrument if an original check or other order drawn on the county treasury is lost or destroyed.[32] The "county auditor shall maintain an account for each county, district, or state officer authorized or required by law to receive or collect money . . . intended for the use of the county," and in the account, "the auditor shall detail the items of indebtedness charged against that officer and the manner of discharging the indebtedness."[33] In addition, the auditor "shall see to the strict enforcement of the

---

[28]TEX. COMPTROLLER OF PUBLIC ACCOUNTS, STANDARD FINANCIAL MANAGEMENT SYSTEM FOR TEXAS COUNTIES (SFMSTC), Procedure No. 510-10-1 (Discussion) (1980).

[29]Local Gov't Code § 113.064(a).

[30]Id. § 113.064(b)(c). Section 113.901 of the Local Government Code provides that a county auditor may not audit or approve an account for the purchase of supplies or materials for the use of the county or a county officer unless a requisition for these items, signed by the officer and approved by the county judge, is attached to the account. The county judge may waive the requirement that he or she approve the requisition.

[31]Agan, 940 S.W.2d 77.

[32]Local Gov't Code § 113.041(d).

[33]Id. § 112.005.

law governing county finances."[34] In a county with a population of fewer than 190,000 people, the auditor may adopt and enforce regulations not inconsistent with law, while in a county of more than 190,000 people, the auditor "shall prescribe the accounting system for the county," not inconsistent with the law."[35] Section 113.042 of the Local Government Code indicates that individual county officers have authority to draw warrants and checks.[36] Thus, the commissions court may delegate to a county officer the responsibility for preparing claims for his or her own department. The commissioners court's decision as to the delegation of the ministerial tasks involved in preparing claims is a discretionary matter, subject to review for abuse of discretion.[37]

The Chair of the State Affairs Committee states that procedures for performing disbursement related duties are set out in the comptroller's Standard Financial Management System for Texas Counties ("SFMSTC"), but points out that the manual does not state which county official is the proper official to perform these duties.[38]

The accounting systems in this manual are not intended as uniform procedures to be followed by Texas counties.[39] Counties must comply with the minimum accounting and financial management standards stated in the SFMSTC, but within these general guidelines, all counties are free to design their own systems.[40] The model systems are presented in the SFMSTC "as a service to those counties which wish to improve their financial systems but are uncertain as to how to go about making

---

[34]Id. § 112.006(b).

[35]Id. §§ 112.001, .002. These provisions expressly state that the auditor's rules and accounting system shall not be inconsistent with rules adopted under section 112.003 of the Local Government Code, which authorizes the comptroller to "prescribe and prepare the forms to be used by county officials in the collection of county revenue, funds, fees, and other money and in the disbursement of funds," and to "prescribe the manner of keeping and stating the accounts of [county] officials." Id. § 112.003(a).

[36]Id. § 113.042(e) (referring to a check or warrant issued or drawn by an officer under the provisions of this section); see also Gov't Code § 61.001; Attorney General Opinion H-590 (1975) (jurors' payments are to be made by check drawn on jury fund by district clerk).

[37]Agan, 940 S.W.2d at 81.

[38]Procedures Nos. 510-20-1, 510-20-2, 510-20-4 in the SFMSTC address pre-auditing and disbursement. The purpose of these procedures is to verify certain kinds of requests for payment and to describe a procedure for preparing and processing warrants in payment of vendor invoices and other disbursements. SFMSTC, Procedure Nos. 510-10-1, 510-20-2, 510-20-4 (Purpose Sections) (1980).

[39]SFMSTC, Procedure No. 001 (Introductory Section).

[40]For example, the general standards provide that the financial management system of each county government "shall make it possible to show compliance with all applicable legal provisions," and that it "shall make it possible to determine . . . the financial position and results of the financial operations of all constituent funds and account groups." SFMSTC, Procedure No. 100, Standards 1 & 2.

changes."[41] County officers might use relevant procedures to carry out duties delegated to them by statute[42] or by the commissioners court, and the commissioners court might wish to consider the procedures in exercising fiscal powers, including its delegation of ministerial duties to an appropriate county officer.

## S U M M A R Y

Under section 113.061 of the Local Government Code, claims are registered by the county treasurer after they have been approved by the county auditor and the county commissioners court. Section 113.061 does not create a "first in time, first in line" order of payment.

In *Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 82 (Tex. 1997), the Texas Supreme Court concluded that the county treasurer's core functions consisted of those duties assigned to the treasurer by the legislature and that the commissioners court could not allocate the treasurer's core functions to any other officer, including the county auditor. Duties not specifically assigned to the county treasurer by the legislature are not among the county treasurer's core functions. The commissioners court may, within its discretion, delegate "non-core" ministerial duties to a county official that has statutory authority to perform these clerical functions. Since the legislature had delegated payroll preparation responsibilities that involved disbursing county funds to the county treasurer, the disbursement responsibilities could not be delegated to another officer. The commissioners court could delegate other ministerial functions involved in payroll preparation to a county official other than the treasurer.

The rule established by the *Agan* case for payroll preparation also applies to the preparation and processing of claims for other county expenditures. If the legislature has not assigned a function to a specific officer, the commissioners court acting in its legislative capacity may delegate that responsibility to an appropriate county official.

---

[41]SFMSTC, Procedure No. 100, Standards 1 & 2.

[42]For example, the auditor in a county with a population of 190,000 or more might consult the SFMSTC for assistance in prescribing the system of accounting pursuant to section 112.001 of the Local Government Code.

The Texas Supreme Court expressly disagreed with the conclusions of Attorney General Opinions JM-911 and JM-986 (1988).  Accordingly, these opinions are overruled.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General